**Brent Allyn KILTZ, Kathryn L. Kiltz, William Bradley Kiltz, and Kristine E. Kiltz, Appellants–Claimants,**

v.

**Sharon Bollinger KILTZ, The Personal Representative of the Estate of Alfred William Kiltz, Deceased, Appellee–Respondent.**

No. 65A01–9805–CV–184.

Court of Appeals of Indiana.

March 29, 1999.

Robert L. Burkart, Ziemer Stayman Weitzel & Shoulders, Evansville, Indiana, Attorney for Appellant.

Robert R. Faulkner, Fine & Hatfield, Evansville, Indiana, Attorney for Appellee.

## OPINION

STATON, Judge

Brent, Kathryn, William, and Kristine Kiltz (the Children) appeal the trial court's denial of their claim against the estate of Alfred William Kiltz (Father), deceased. The Children raise three issues on appeal, which we consolidate and restate as one:

> Whether Section 5 of the property settlement agreement between Father and Mother requiring Father to maintain a life insurance policy for the benefit of the Children gives rise to a valid and enforceable claim against Father's estate where Father did not own a life insurance policy for the benefit of the Children at the time of his death.

We reverse.

Father and Mother's marriage was dissolved in August 1983 by the Warrick Circuit Court. Father and Mother entered into a Separation and Property Settlement Agreement (Agreement) in January 1984 and the same was approved by the Warrick Circuit Court on February 6, 1984. The Agreement has never been modified, amended, revoked, or revised. Section 5 of the Agreement required Father to maintain a one-hundred thousand dollar life insurance policy with the Children as named beneficiaries. Father did not have an insurance policy with the Children as named beneficiaries at the time of his death.

Father's will was admitted to probate on May 19, 1997. The Children subsequently filed their claim against Father's estate as third party beneficiaries to the Agreement between Father and Mother, which Father allegedly breached by failing to maintain the life insurance policy pursuant to Section 5. Sharon Kiltz (Kiltz), the personal representative of Father's estate, filed a disallowance of the claim. After a bench hearing, the trial court denied the Children's claim without entering findings of fact or conclusions of law. This appeal ensued. Additional facts will be provided as necessary.

■ Upon dissolution of marriage, parties are free to craft their own settlement agreement and such agreements are contractual in nature and binding. *Myers v. Myers,* 560 N.E.2d 39, 42 (Ind.1990); *DeBoer v. De-Boer,* 669 N.E.2d 415, 420 (Ind.Ct.App.1996), *trans. denied.* Parties are free to divide their property in any way they choose and their agreement in that regard is interpreted as any other contract. *Myers,* 560 N.E.2d at 43–44. General rules applicable to construction of contracts govern construction of marriage settlement agreements. *Higgins v. St. Joseph Loan and Trust Co. of South Bend,* 98 Ind.App. 674, 186 N.E. 910, 912 (1933), *trans. denied.*

■ The interpretation and construction of contract provisions is a function for the courts. On appeal, our standard of review is essentially the same as that employed by the trial court. Unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning. *Ostrander v. Bd. of Directors, Porter,* 650 N.E.2d 1192, 1196 (Ind.Ct.App.1995), *trans. denied.* The terms of a contract are not ambiguous merely because controversy exists between the parties concerning the proper interpretation of terms. *Tate v. Secura Ins.,* 561 N.E.2d 814, 819 (Ind.Ct.App.1990). Where the terms of a contract are clear and unambiguous, the terms are conclusive and we will not construe the contract or look at extrinsic evidence but will merely apply the contractual provisions. *Jackson v. DeFabis,* 553 N.E.2d 1212, 1215 (Ind.Ct.App.1990).

■ Our review of the disputed contract terms reveals no ambiguity and the record contains no evidence that the trial court considered the terms ambiguous. Thus, we must give effect to the intentions of the parties as expressed in the four corners of the instrument. Section 5 of the Agreement is as follows:

5. There were four children born of the marriage of the parties and Husband agrees to keep a policy of insurance with Northwestern Mutual Life Insurance Company in effect on his life, in the sum of one hundred thousand dollars ($100,000.00) with the said children of the parties as beneficiaries thereof. Wife shall have the right to require proof of the existence of the said policy in full force and effect, unencumbered annually. (Record, 54).

The Children contend that Section 5 was included for their direct benefit. Kiltz contends that Section 5 of the Agreement was only a provision to secure child support. The trial court, although not entering a written finding to that effect, indicated from the bench that he interpreted Section 5 to be a provision to secure spousal maintenance. We agree with the Children.

■ A third party beneficiary contract exists when (1) the parties intend to benefit a third party; (2) the contract imposes a duty on one of the parties in favor of the third party; and (3) the performance of the terms of the contract renders a direct benefit to the third party. *National Board Examiners for Osteopathic Physicians and Surgeons, Inc. v. American Osteopathic Ass'n,* 645 N.E.2d 608, 618 (Ind.Ct.App.1994). The plain language of Section 5 evidences: (1) Father's intent to benefit the Children; (2) Father's duty to maintain a $100,000.00 life insurance policy with the Children as named beneficiaries; and (3) performance of Father's duty was to directly benefit the Children. Thus, the Children are third-party beneficiaries of the Agreement between Father and Mother. As third party beneficiaries, the Children are entitled to enforce the terms of the Agreement which benefit them. *Id.*

Kiltz's argument that Section 5 was a provision to secure child support that terminated

when the children reached majority is not supported by the terms of the Agreement. Section 5 does not provide any indication that its purpose was to secure child support payments or that it was in lieu of child support payments. Section 5 does not state that Father's obligation would terminate when the children reached majority. Further, there is no provision for child support in the Agreement for which Section 5 would secure compliance. Too, all four of the Children were twenty-one years of age and older when the Agreement was made and approved by the circuit court.

■■■■■ Kiltz argues that Section 5 cannot be construed as a property settlement provision because a life insurance policy to be paid for out of future income does not qualify as a marital asset pursuant to IND.CODE § 31–15–7–4 (1998). However, IC 31–15–7–4 merely guides a trial court's distribution of marital assets. When the parties craft property settlement agreements, they are free to include provisions that a trial court cannot otherwise include in its marital division. *Kizziah v. Kizziah*, 651 N.E.2d 297, 298 (Ind. Ct.App.1995). An insurance obligation benefitting children in a property settlement agreement is valid and enforceable. *Meece v. Meece*, 495 N.E.2d 827, 827–28 (Ind.Ct. App.1986).

In *Meece*, husband agreed to designate the couple's two children as beneficiaries of an insurance policy on his life pursuant to a negotiated property settlement agreement. Husband later remarried and without knowledge or consent of the ex-wife, the children or the court, substituted his new wife as the policy beneficiary. When husband died, the ex-wife and children learned of the substitution and brought suit against the new wife. This Court held that where consideration is exchanged for future proceeds of a specific policy of the insured, "equity vests the beneficiary with the vested interest in the policy ... which he cannot be divested of by the insured without his knowledge and consent." *Id.* at 828. Likewise, the Children could not be divested of their interest in the policy negotiated in the Agreement between Father

and Mother without their knowledge and consent.

■■■ The trial court's interpretation of Section 5 as a provision to secure spousal maintenance is also not supported by its plain language, which makes no mention of spousal maintenance. Section 6 of the Agreement reads as follows:

6. Husband agrees to secure the obligations due and owing Wife for payments of maintenance pursuant to the terms of this Agreement. Husband agrees to present at least annually, sufficient proof of the existence of life insurance, on his life, to guarantee the payment of Husband's unpaid obligation. The parties stipulate and agree that the unpaid sum shall not constitute a lien against real estate.[1] (Record, 54).

In construing a contract, a court must accept a construction so as not to render words, phrases, or terms ineffective or meaningless. *Robinson v. Century Personnel, Inc.*, 678 N.E.2d 1268, 1270 (Ind.Ct.App.1997), *trans. denied.* Construction of Section 5 as a provision to secure spousal maintenance renders Section 6, which specifically provides for insurance to secure spousal maintenance obligations, redundant.

■■■ In a further attempt to support the contention that Section 5 was intended to secure maintenance obligations, whether for the children or for Mother, Kiltz points out that every section of the Agreement has a topic heading, except for Sections 5 and 6. The topic heading of Section 4 is *"Maintenance"*. Thus, Kiltz argues, Section 5 must also be a maintenance provision. However, headings are not conclusive as to substantive provisions of a property settlement agreement. *See In re Marriage of Buntin*, 496 N.E.2d 1351, 1354 (Ind.Ct.App.1986), *trans. denied*, (monthly payments to ex-wife were deemed property settlement and not maintenance despite heading titled "maintenance, education and counseling").

■■■ Kiltz further contends that a construction that finds Father obligated himself to maintain a $100,000.00 life insurance policy

---

1. Section 4 of the Agreement sets forth Father's spousal maintenance obligation.

with the Children as named beneficiaries for the rest of Father's life is unreasonable. We see no merit to this argument. Absent limiting language, an obligation in a property settlement agreement to maintain life insurance extends through the death of the obligor. *Thomas v. Thomas,* 577 N.E.2d 216, 220 (Ind.1991).

■ Kiltz also argues that a residuary bequest to the Children under Father's will should be regarded as satisfaction of the debt owed due to Father's breach of the Agreement.[2] We disagree. Article I of Father's will specifically provides for the payment of all of Father's "enforceable debts". (Record, 158). Where a will provides for payment of debts, there is no presumption that a legacy was in payment of the debt. *Allen v. Etter,* 92 Ind.App. 297, 175 N.E. 286, 289 (1931). Further, the will need not refer specifically to the debt in question. There need only be a provision that directs that debts be paid. *Id.* at 288–89.

■ Finally, Kiltz argues that the Children's claim is barred by the doctrine of laches. The elements of laches are: (1) inexcusable delay in asserting a right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change of circumstances causing prejudice to the adverse party. *Matson v. Matson,* 569 N.E.2d 732, 733 (Ind.Ct.App.1991). The record contains no evidence that the Children knew that Father did not maintain the requisite life insurance policy until after he died. Kiltz has not presented any argument as to how Father's estate has been prejudiced. Accordingly, Kiltz's laches claim must fail.

We find that the plain language of the Agreement leads to the conclusion that Father contracted to maintain a policy of insurance for the duration of his life with the Children as named beneficiaries. Father breached this provision of the Agreement and the Children, as third party beneficia-

ries, have a valid and enforceable claim against Father's estate.

Reversed.

RILEY, J., and BROOK, J., concur.

---

2. Father's will provides that the Children will receive two-thirds income interest in a residuary trust after all debts, expenses and taxes are paid. This income will continue until the death or remarriage of Father's third wife, Kiltz, and the oldest of the Children reaches age 50, at which time the Children will receive the balance free of trust.