Mary J. BLUME, Appellant–Petitioner,

v.

Michael C. STEWART, Appellee–Respondent.

No. 32A01–9905–CV–158.

Court of Appeals of Indiana.

Aug. 27, 1999.

Jeffrey A. Modisett, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellant.

Paul A. Hadley, Danville, Indiana, Attorney for Appellee.

## OPINION

BAKER, Judge

Appellant-petitioner Mary J. Blume appeals the trial court's finding that appellee-respondent Michael C. Stewart was not in contempt for failure to pay child support. Specifically, Blume argues that Stewart's previous, substantial overpayments may not be applied to offset several years of future child support obligations, but rather they should simply be viewed as gratuitous. She asserts that their court-approved child support agreement was not intended to permit prepayment beyond one month. Further, Blume contends that even if the agreement is interpreted to permit such prepayment, the agreement is void as against public policy.

### FACTS

The facts most favorable to the judgment reveal that on January 9, 1983, Blume gave birth to a son. On September 21, 1983, Stewart acknowledged paternity and the Marion County Juvenile Court approved the parties' Agreed Stipulation to Establish Paternity, For Expenses of Birth, Child Support and Visitation. With respect to child support, the court-approved agreement provided in pertinent part as follows:

*CHILD SUPPORT:*

A. Father shall be obligated to and liable for the payment to Mother, as and for Child Support for the benefit of said minor child on the following basis:

Commencing on the first day of July, 1983, following entry of an Order Establishing Paternity and Approving this Agreement and *the first day of each month thereafter, Father shall pay child support* for the benefit of the minor child of the parties in the amount of Thirty Dollars ($30.00) per week, that is, One Hundred Thirty Dollars ($130.00) per month.

B. *Father shall pay such amount of child support once each month,* in advance, commencing on the first day of July, 1983 following the date of entry of an Order Establishing Paternity and Approval of this Agreement in this cause of action and continuing on the *same day of each month therefter* [sic], as recited and provided hereinabove in Paragraph *A.*, above, and further subject to the conditions provided hereinbelow in Paragraph *D.*, hereof.

C. Such obligation for the payment of Child Support shall continue in such amount as is provided hereinabove, which amount shall be paid as support for said minor child by Father directly to Mother in person, for the benefit of said minor child on a current basis. *Such Child Support payment, or a portion thereof, may be*

*accelerated and paid in advance of its regularly respective due date by Father to Mother without penalty.*

. . . .

R. at 29 (emphasis added).

Stewart was in the Air Force at the time the agreement came into effect and arranged to have his monthly child support payments deducted from his salary and paid directly to Blume. As his pay increased over the years, larger child support payments were sent to Blume. For example, in 1984 the payments had risen to $230 and by 1991 they had increased to $376. Upon leaving the Air Force, Stewart ceased making child support payments by January 1993. Stewart did not find employment until one year after leaving the Air Force and returning to Indiana. Since 1994, he has been gainfully employed. Stewart resumed payments in 1998.

On October 21, 1998, Blume filed a Petition for Contempt and Modification of Support, alleging a child support arrearage of over $5,000. A trial was held on February 10, 1999 and on February 26 the trial court, relying on the parties' court-approved child support agreement, ruled that Stewart was not in arrears because he had prepaid the child support while in the Air Force. Specifically, the judgment read as follows:

The Agreement approved by the Court on 21 September, 1983, is clear and unambiguous. The parties must be held to that Agreement. Therefore, the Court finds that Michael is not in contempt of Court for failure to pay child support, that Michael is entitled to a credit for over payment in the amount of Five Thousand, Two Hundred, Ninety-eight Dollars and Eighty-two Cents ($5,298.82), and that further Mary's petition to modify child support filed 21 October, 1998, should be granted and the Court orders Michael to pay the sum of Ninety Dollars ($90) per week through the Clerk of the Hendricks Circuit Court and in no other manner, retroactive to the date of filing of the Petition For Contempt And Modification Of Support filed by Mary on 21 October, 1998. His payment may be subtracted from the over-payment judgment entered by this Order.

R. at 12–13. Blume appeals the portion of the judgment regarding contempt.

## DISCUSSION AND DECISION

### I. Child Support Agreement

Blume argues that Stewart's excess child support payments while in the Air Force were non-conforming payments, as they were not of the type contemplated by the agreement. Therefore, she asserts that the excess should be considered gratuitous and should not be credited toward later support obligations. She notes that the court order called for payments of $30 per week and that Stewart never informed her that the excess amounts were intended as prepayment of his support obligation. Further, Blume argues that the intent of the prepayment language in the agreement was to permit payments on a schedule other than weekly, such as monthly, to account for Stewart's military pay cycles, but that paying years in advance was not intended.

Blume correctly cites *Beehler v. Beehler,* 693 N.E.2d 638, 640 (Ind.Ct.App. 1998), for the proposition that a noncustodial parent is required to make support payments in the manner, amount and at the times required by the support order until the terms of such order are modified. Moreover, she accurately states that the parent will not generally be allowed credit for payments not conforming to the support order, as such payments are considered gratuitous or voluntary contributions and should not be considered a prepayment of the support obligation or credited against arrearage due. *Fiste v. Fiste,* 627 N.E.2d 1368, 1373 (Ind.Ct.App. 1994). Therefore, the issue centers around whether the payments are non-conforming, which requires interpretation of the agreement.

The interpretation and construction of provisions in such an agreement is a function for the courts. *Kiltz v. Kiltz,* 708 N.E.2d 600, 602 (Ind.Ct.App.1999). Terms will be given their plain and ordinary meaning unless they are ambiguous. *Id.* Ambiguity does not exist merely because controversy exists between the parties concerning the proper interpretation of the terms. *Id.* Where the terms of the agreement are clear

and unambiguous, the terms are conclusive and we will not construe the agreement or look at extrinsic evidence. *Id.*

■ Here, the court-approved agreement requires that Stewart pay child support in the amount of $130 on the first day of every month.[1] However, the agreement also provides that "[s]uch Child Support payment, or a portion thereof, may be accelerated and paid in advance of its regularly respective due date by Father to Mother without penalty." R. at 29. We find no ambiguity in the later provision. Thus, we must give effect to the intentions of the parties as expressed in the four corners of the instrument. *Kiltz,* 708 N.E.2d at 602. The plain language of the agreement provides that Stewart may prepay child support without penalty. Therefore, we cannot conclude that Stewart's substantial amounts of prepayment[2] were non-conforming, as they did not vary in the manner, amount or time required by the terms of the court-approved agreement.[3]

## II. Public Policy

To avoid the clear and unambiguous terms of the agreement, Blume argues in the alternative that such an agreement is void as against public policy. She asserts that Indiana has a strong policy favoring regular, periodic child support payments. She contends that the purpose of child support is to "provide regular and uninterrupted support" for the children, which "would be frustrated if the non-custodial parent could voluntarily build up a substantial credit and then refuse to make support payments for a period of time." *State v. Funnell,* 622 N.E.2d 189, 191 (Ind.Ct.App.1993).

We have frequently cited *Haycraft v. Haycraft,* 176 Ind.App. 211, 215–16, 375 N.E.2d 252, 255 (1978) for the above proposition.

See e.g., *Funnell,* 622 N.E.2d at 191; *Matson v. Matson,* 569 N.E.2d 732, 733 (Ind.Ct.App. 1991); *In re Marriage of Bradach,* 422 N.E.2d 342, 352–53 (Ind.Ct.App.1981). In *Haycraft,* we held that the father's overpayments did not comply with the original child support order and were, therefore, considered gratuitous rather than prepayment of future support obligations. We explained our reasoning as follows:

> If *non-court approved prepayments,* such as those which [Father] suggests, were to be permitted, it would be possible for a parent, who is obligated to pay support, to build up a substantial credit, then suddenly refuse to make support payments for several weeks, months, or even years, thus thwarting the court's purpose in setting the payments at certain specified intervals, that of providing regular, uninterrupted income for the benefit of that parent's children, who are in the custody of another. The regularity and continuity of *court decreed support payments* are as important as the overall dollar amount of those payments.

*Id.* (emphasis added).

The obvious distinction between *Haycraft* and the instant case is that in *Haycraft,* prepayment was not court approved, while it was here. Moreover, the clear import of our holding in *Haycraft* suggests an effort to prevent parents from styling their own support schedule contrary to that ordered by the trial court. To allow such "agreed" payment schedules without court involvement could work a detriment upon the child's right to be supported by the parents. Additionally, we note that Blume has cited to no cases where an original court order approving prepayment has been held void on public policy grounds. Rather, all of the cases Blume relies on involved payments which were not

---

1. Blume's assertion that the agreement required weekly payments, Appellant's Brief at 8–10, is clearly incorrect. R. at 29 (providing that Stewart "shall pay such amount of child support once each month").

2. At the time of trial, Stewart's payments while in the Air Force still resulted in a net overpayment amount of approximately $4,000.

3. Further, we note that Blume's assertion that the prepayment provision "was designed to permit payments on a schedule other than weekly to

account for [Stewart's] military pay cycles" but not more than monthly is unpersuasive. Appellant's Brief at 9. Such an intent cannot be gleaned from the plain language of the agreement, as it expressly provided for monthly, not weekly payments. R. at 29. If we were to accept Blume's interpretation, the prepayment provision would be rendered meaningless. *See Kiltz,* 708 N.E.2d at 603 ("In construing a contract, a court must accept a construction so as not to render words, phrases, or terms ineffective or meaningless.").

court approved or were non-conforming. *See Malone v. Malone*, 659 N.E.2d 636, 638–39 (Ind.Ct.App.1995) (prior payment of tax obligation non-conforming payment); *Funnell*, 622 N.E.2d at 191 (payments voluntarily made prior to court ordered child support); *In re Marriage of Bradach*, 422 N.E.2d at 352–53 (overpayments which were not court approved).[4]

■ Blume has failed to persuade us that court-approved child custody agreements which include a provision for prepayment of child support are void as against public policy. We note that such agreements still provide regular and uninterrupted support for the children, as no payments are foregone and the custodial parent, who has agreed to advance payments, simply must budget the money in his or her fiduciary capacity.[5] Therefore, we refuse Blume's invitation to invade the trial court's discretion in regulating child support payments. *See Jenkins v. Jenkins*, 567 N.E.2d 136, 139 (Ind.Ct.App. 1991) ("the trial court is accorded latitude in decisions regulating child support payments").

### CONCLUSION

In summary, we hold that the court-approved agreement between Stewart and Blume clearly and unambiguously provided for prepayment of Stewart's child support obligation. Therefore, his overpayments conformed to the agreement and he was entitled to credit for such excess payments. Moreover, we find the prepayment provision does not violate public policy.

Judgment affirmed.

SHARPNACK, C.J., and MATTINGLY, J., concur.

---

**4.** Blume also cites *Schrock v. Gonser*, 658 N.E.2d 615 (Ind.Ct.App.1995), *trans. denied*. In *Schrock*, the father unilaterally reduced child support each time one of his children was emancipated. *Id.* at 615. The court held that even if a custodial parent agrees to forego child support, such an extrajudicial agreement is unenforceable because the parent has no right to contract away the child's support benefits. *Id.* at 616. Schrock is inapplicable to the instant case because here, not only was the agreement approved by the court, the agreement did not contract away support benefits, but rather provided them earlier than required.

**5.** The custodial parent acts in a fiduciary capacity when receiving child support payments. *Malone*, 659 N.E.2d at 639.