The TRAVELERS INDEMNITY COMPANY and Travelers Casualty and Surety Company, Appellants–Defendants,

v.

P.R. MALLORY & COMPANY, Appellees–Plaintiffs,

v.

American States Insurance Company, et al., Defendants.

No. 54A05–0111–CV–507.

Court of Appeals of Indiana.

July 30, 2002.

Kenneth T. Roberts, Tasha R. Roberts, Roberts & Bishop, Indianapolis, IN, Attorneys for Appellants.

John S. Capper, IV, Berry Capper & Tulley, Crawfordsville, IN, Thomas M. Gil-

ler (Pro Hac Vice), Kraft Foods North America, Inc., Northfield, IL, Attorneys for Appellees.

## OPINION

FRIEDLANDER, Judge.

The lawsuit underlying this appeal finds on one side Kraft Foods, Inc. and approximately thirty-five other companies (hereinafter collectively referred to as "Kraft" unless otherwise indicated) that Kraft Foods has acquired over the years. On the other side are more than seventy liability insurers, including the appellant in this action, Travelers Casualty and Surety Company (Travelers Casualty). As a result of various business operations conducted by Kraft and its co-plaintiffs, Kraft has been required to undertake costly environmental cleanup activities in numerous locations in several different states. Kraft sought indemnity and reimbursement for those cleanup activities from the aforementioned liability insurers. Disputes arose between insured and insurers, and Kraft filed suit in the Montgomery Circuit Court in Montgomery County, Indiana.

The specific matter before us comes by way of interlocutory appeal, and concerns an order issued by the Montgomery Circuit Court that is descriptively captioned, "Order Enjoining Allstate Insurance Company and American Motorists Insurance Company From Violating Case Management Order No. 2 (Injunction Order)." *Appendix of Appellants the Travelers Indemnity Company and Travelers Casualty and Surety Company* (hereinafter *Appellants' Appendix*) at 36. Although Travelers Casualty is the appellant in this action, we must first address two threshold issues presented by Kraft on cross-appeal. We restate those issues as follows:

1. Does Travelers Casualty have standing to appeal the Injunction Order?

2. Is the issue of the correctness of the Injunction Order moot?

Travelers Casualty presents the following restated issues for review:

3. Did the trial court err in enjoining the parties from proceeding on the Illinois lawsuit on the ground that such was proscribed by paragraph III(C) of the Second Case Management Order?

4. Does the trial court's ruling represent an anti-suit injunction, and if so, do the circumstances justify such a ruling?

5. Is the injunction overly broad?

We reverse and remand.

For purposes of this appeal, we need expand only a little on the preliminary facts set out in the opening paragraph of this opinion. Kraft filed suit in Montgomery Circuit Court on May 22, 2000 and then filed an amended complaint approximately three months later. Thereafter, the parties conferred and agreed to terms that would assist in the efficient management of the litigation. Those terms were reduced to writing and entered on January 24, 2001 by a court order that was styled "Second Case Management Order" (CMO2). Paragraph III(C) of CMO2 lies at the heart of instant dispute, and provides as follows:

All defendant insurers have asserted or take the position that each has the right to assert cross-claims against each other and against plaintiffs for contribution and indemnity. Plaintiffs assert the right to bring cross-claims in response. Accordingly, all such cross-claims by defendant insurers against each other and as against plaintiffs, and by plaintiffs in response thereto, are hereby further deemed to have been denied pursuant to a general denial, without the necessity of

explicitly pleading such cross-claims and denials. Furthermore, having been pleaded and denied, such cross-claims are hereby stayed and all applicable limitations periods and other time bars are tolled until further order of the Court. Such cross-claims shall be adjudicated by the Court, to the extent necessary, by the parties holding such cross-claims, in a subsequent phase of this litigation.

*Appellants' Appendix* at 85.

On August 1, 2001, Allstate Insurance Company (Allstate) and American Motorists Insurance Company (AMICO) filed an action in the Circuit Court of Cook County, Illinois that raised virtually the same issues and involved the same parties as the Montgomery County, Indiana case. In essence, AMICO and Allstate asserted as affirmative causes of action in the Illinois case that which they had offered as affirmative defenses in the Indiana action. In addition, they asserted cross-claims in the Illinois action against all of the other insurer defendants. AMICO and Allstate do not dispute that the Illinois action was filed in anticipation of a motion to dismiss the Indiana action on *forum non conveniens* grounds. AMICO and Allstate did indeed file such a motion in the Montgomery Circuit Court in early August of 2001, asking that court to dismiss the Indiana action because the Illinois forum was more convenient. Shortly thereafter, Kraft filed a motion to enjoin Allstate and AMICO from what it alleged were violations of the CMO2. The "violations" identified by Kraft included the filing of the Illinois lawsuit. Allstate and AMICO opposed Kraft's request for an injunction, but no other defendant joined in opposing the motion. On August 21, 2001, Kraft filed a motion in opposition to Allstate and AMICO's motion to dismiss on *forum non conveniens* grounds.

On October 24, 2001, the Montgomery Circuit Court issued its ruling on the competing motions to dismiss and Kraft's request for injunctive relief. It is from that order that the instant appeal arises. The following portions of that order are germane to this appeal:

The court finds that the plain language of the CMO2 contemplates that all the issues between all the parties to the Montgomery County case raised by the Montgomery County complaint, including all cross-claims and counterclaims, be litigated and determined in the Montgomery County court. The common sense notions of economical and efficient use of human and material resources support such an interpretation. The Montgomery County case was filed more than a year before the Cook County case was filed.

The Cook County case clearly seeks relief against the plaintiffs in the Montgomery County case. The plaintiffs clearly have standing to ask this court to enjoin the defendants in the Montgomery County case from proceeding with litigation of the same issues in another court. The immediate and direct injury suffered by plaintiffs is the necessity of defending and prosecuting actions, which involve the identical issues and parties, in two separate and disparate forums. There is no adequate relief to the injury and damages plaintiffs suffer as a result of the filing of the second and duplicitous action at law and equity offers the most direct and effective relief.

AMICO and Allstate's contention that the CMO2 contemplates an alternative forum by the phasing and staging discovery, forum and venue issues is not an accurate interpretation of the CMO2. The issue is whether Montgomery Count is the proper venue and forum for this action. Whether there is an alternative forum is a secondary issue. Even if the

CMO2 could be read as contemplating an alternative forum, whether that forum should be utilized cannot be determined, or anticipated, until the issue is decided, given the plain meaning of the language of paragraph III C of the CMO2.

Next AMICO and Allstate contend that filing a competing action is standard practice when the original venue is contested. That may well be. But when there is in place a provision governing the conduct and order of the case, as is in the CMO2, the standard practice must yield to the orders governing the particular case. What is standard practice is of no avail to AMICO and Allstate under the CMO2.

\* \* \* \* \* \*

The court finds that the filing of the Cook County, Illinois case duplicated the action filed in Montgomery County, Indiana in large part. The court further finds that to the extent the Cook County case duplicated the Montgomery County case, the filing of it violated the spirit, meaning, and intent and clear meaning of CMO2 paragraph III C. The filing of the Cook County case required plaintiffs to litigate the same issues in two courts causing them damages in terms of expenditure of attorneys' time, associated costs, and perhaps other damages. The pendency of the Cook County case constitutes a continuing immediate irreparable harm for which there is no adequate relief at law.

The court finds that AMICO and Allstate should immediately dismiss or withdraw the Cook County Illinois case as to all issues and all parties as are presently involved in the Montgomery County, Indiana case. The court further finds that AMICO and Allstate and all other parties to the Montgomery case should immediately cease any and all litigation in the Cook County case involving issues and parties that are presently involved in the Montgomery County case. The court further finds that the issues of sanctions against AMICO and Allstate for violation of the CMO2 and any damages plaintiffs reserved for further hearing and consideration.

IT IS THEREFORE ORDERED that AMICO and Allstate immediately dismiss or withdraw the Cook County, Illinois case as to all issues and all parties presently involved in the Montgomery County, Indiana case.

IT IS THEREFORE ORDERED that AMICO and Allstate and all other parties to the Montgomery County case immediately cease any and all litigation in the Cook County case involving issues and parties presently involved in the Montgomery County case.

*Appellants' Appendix* at 39–41.

1.

■ Kraft contends upon cross-appeal that Travelers Casualty lacks standing to appeal the ruling on the competing motions to dismiss and the request for injunctive relief, for two reasons. First, Travelers Casualty seeks relief from a portion of an order that was specifically directed to a party other than Travelers Casualty. Second, Travelers Casualty seeks relief in the Montgomery Circuit Court from an order concerning a different action in a different court that has since been voluntarily dismissed, and in which Travelers Casualty was not joined as a party.

■ Standing is defined as having "sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Black's Law Dictionary* 1405 (6th ed. 1990). In order to have standing, "the party challenging the law must show adequate injury or the immedi-

ate danger of sustaining some injury." *State, Indiana Civil Rights Comm'n v. Indianapolis Newspapers, Inc.,* 716 N.E.2d 943, 945 (Ind.1999) (quoting *Pence v. State,* 652 N.E.2d 486, 488 (Ind.1995)).

The outcome of the standing issue depends in large part upon the resolution of the question regarding the scope and meaning of the trial court's ruling. Kraft argues that the ruling merely enjoined the parties in that suit, which did not include Travelers Casualty, from further litigating the issues that were also present in the Montgomery County action. Travelers Casualty, on the other hand, contends that the scope and import of the ruling is significantly more far-reaching. We agree with Travelers Casualty and will discuss that issue more fully later in this opinion. To foreshadow on that subject, the rationale upon which the ruling is based, if applied in future rulings, would prevent Travelers Casualty from litigating any aspect of the legal dispute involving Kraft in any forum other than the instant case in Montgomery County, Indiana. As such, Travelers Casualty clearly has cognizable legal interests at stake, and stands to suffer the "injury" of being limited to the instant suit in the Montgomery Circuit Court to resolve the legal controversies involved. Therefore, Travelers Casualty had standing to challenge the rulings at issue.

### 2.

Kraft contends that the order enforcing the CMO2 is moot, and therefore not a proper subject for appeal. According to Kraft, the ruling is moot because Travelers Casualty was not a party in the Illinois case to which the ruling was directed, and that case has now been dismissed. Thus, according to Kraft, any opinion issued on this case would be purely advisory in nature.

In Indiana, a case is deemed moot when no effective relief can be rendered to the parties before the court. *A.D. v. State,* 736 N.E.2d 1274 (Ind.Ct. App.2000). When a dispositive issue in a case has been resolved in such a way as to render it unnecessary to decide the question involved, the case will be dismissed. *Id.* Unlike our federal counterparts under Article III of the United States Constitution, Indiana appellate courts' jurisdiction is not limited under the Indiana Constitution to actual cases and controversies. *Id.* Although we prefer not to issue advisory opinions, we may decide an arguably moot case on its merits if it involves questions of great public interest. *Id.* Cases that fit within this exception typically are those containing issues that are likely to recur. *Id.*

Here, the court essentially issued a two-faceted ruling. First, it ordered Allstate and AMICO to dismiss the Illinois action. Second, it determined that all claims presented in the case filed in Montgomery County, including all cross-claims and counterclaims, should be litigated in the Montgomery County court. As a result, the court ordered AMICO and Allstate *and all other parties to the Montgomery case* to immediately cease any and all litigation in the Illinois case. As we will explain more fully below, this effectively amounts to an injunction against any party to the Montgomery County action litigating the issues presented therein in any other forum. That ruling clearly has implications for future proceedings in this matter and therefore is not moot. We will, therefore, consider the merits of claims advanced by Travelers Casualty.

### 3.

Travelers Casualty contends that the trial court erred in enjoining parties other than Allstate and AMICO from proceeding in the Illinois lawsuit. The trial court's

ruling in that respect was based upon its conclusion that CMO2 forbids all parties from pursuing an action in another forum. Therefore, we must determine the meaning and import of the CMO2.

■ We observe first that our courts strongly favor settlement agreements in resolving disputes and controversies. *See Scott v. Randle,* 697 N.E.2d 60 (Ind.Ct. App.1998), *trans. denied.* This is because "[s]ettlements allow our courts to operate more efficiently and, equally important, allow the parties to fashion the outcome of their disputes through mutual agreement." *Id.* at 65–66. Although not technically a settlement agreement, the CMO2 in the instant case was the functional equivalent of one because it was the product of an agreement between the parties concerning how to most efficiently manage the litigation in the future. Moreover, its terms were sanctioned by court order. Therefore, the CMO2 was in the nature of a contract, and the enforcement of its terms a proper subject of court order. *Cf. id.* (a party to a settlement agreement may obtain a judgment enforcing the agreement from the court before which action is pending).

■ Interpreting and construing contract provisions is a task often undertaken by our courts. When reviewing a trial court's ruling in that regard, our task is essentially the same as that employed by the trial court. *Niccum v. Niccum,* 734 N.E.2d 637 (Ind.Ct.App.2000). We assign words and phrases employed in a contract their plain and ordinary meaning, unless we conclude that the terms are ambiguous. *Id.* "Where the terms of a contract are clear and unambiguous, 'the terms are conclusive and we will not construe the contract or look at extrinsic evidence but will merely apply the contractual provisions.'" *Indiana Gaming Co., L.P. v. Blevins,* 724 N.E.2d 274, 278 (Ind.Ct.App.2000), *trans.*

*denied* (quoting *Kiltz v. Kiltz,* 708 N.E.2d 600, 602 (Ind.Ct.App.1999), *trans. denied* ). The terms of a contract are not ambiguous merely because controversy exists between the parties concerning the proper interpretation. *Niccum v. Niccum,* 734 N.E.2d 637.

■ The trial court determined in the instant case that the filing and maintenance of the Illinois action violated the CMO2, and more specifically paragraph III(C) of that order. The court determined that paragraph III(C) forbade Allstate and AMICO, and as well any other party in the Montgomery County action, from maintaining a separate action in Cook County. We think it reasonable to infer that, pursuant to the same rationale, the injunction foreshadows the trial court's view that, pursuant to paragraph III(C), no party in the Montgomery County action may initiate any other proceeding in any other forum if the action involves the same subject matter as the Montgomery County action. We conclude that the plain meaning of paragraph III(C) does not support such a result.

In essence, the provisions of paragraph III(C) may be divided into three categories. First, "defendants" and "plaintiffs" are identified as the parties subject to the provisions contained therein. The second category pertains to the subject matter that is governed by its provisions. We note in this regard that the heading of paragraph III(C) is, *"Cross–Claims." Appellants' Appendix* at 85. The first two sentences of paragraph III(C) state, "All defendant insurers have asserted or take the position that each has the right to assert cross-claims against each other and against plaintiffs for contribution and indemnity. Plaintiffs assert the right to bring cross-claims in response." *Appellants' Appendix* at 85. The remainder of paragraph III(C) supports the interpreta-

tion that it is addressed to only cross-claims for contribution and indemnity. Specifically, it provides that "all such cross-claims" are deemed asserted and denied, that there is therefore no need to plead "such cross-claims and denials", and that "such cross-claims" are to be stayed, thus tolling the running of the limitations period and other time bars. *Id.* The repetitive and exclusive identification of the same subject matter unambiguously reflects that the limitations set out in provisions of paragraph III(C) are directed to cross-claims for contribution and indemnity.

The third category addressed in paragraph III(C) involves the order or sequence of litigation. The concluding portion of III(C) provides that all cross-claims for contribution and indemnity are deemed pleaded and denied, and are thereby stayed. It further provides that "[s]uch cross-claims . . . are to be adjudicated by the Court . . . in a subsequent phase of this litigation." *Id.*

Synthesizing these provisions, the plain meaning of language employed in paragraph III(C) indicates that it regulates "defendants" and "plaintiffs" in the Montgomery County litigation. It provides that cross-claims for indemnity and contribution between and among those parties are stayed, in effect, and that such claims as are brought in that respect will be resolved in a subsequent phase of that litigation. Conversely, we do not find in its provision any indication that it applies to claims other than cross-claims for indemnification or contribution, or that the parties agreed that the litigation is to be conducted exclusively in the Montgomery County court.

In summary, the trial court erred in concluding that paragraph III(C) of the CMO2 forbids all parties from pursuing actions in other forums.

### 4. & 5.

Travelers Casualty contends that the trial court's ruling represents an anti-suit injunction, and that the circumstances do not justify such a ruling. Travelers Casualty also contends that the injunction was overly broad. We need not address these contentions because we have already held that the injunction issued from an erroneous interpretation of the meaning of paragraph III(C). Therefore, the injunction itself is reversed to the extent it proscribes litigation in other forums. We are nevertheless inclined to go a little further in this case than merely reversing the granting of the injunction. This because, as we indicated in our discussion of standing in Issue 2 above, it is likely that a similar question may arise in the future.

As indicated earlier, we prefer not to render advisory opinions. *See Lineberry v. State,* 747 N.E.2d 1151 (Ind.Ct.App. 2001). Thus, we will not issue a ruling that seeks to anticipate future actions undertaken in this litigation and address the issues that might arise therefrom. It is possible, however, that Travelers Casualty is correct in its speculation that the trial court's ruling on Kraft's motion in the Illinois action foreshadows its view with respect to any other action between or among any of the litigants in the Montgomery County action. Whatever rulings the trial court makes in the event that other actions are filed in different jurisdictions in the future, it would clearly be erroneous to do so on the ground that it is forbidden by CMO2. In effect, the trial court's ruling was issued upon quasi-contractual grounds. That is, the court determined that the parties had agreed in the CMO2 to litigate the action exclusively in Montgomery County, and that agreement was given the force of a court order when it was signed as such by the trial court. If the trial court considers similar issues in

the future, it must make its determination mindful of the fact that the CMO2 does not proscribe foreign actions.

In summary, Travelers Casualty has standing to challenge the portion of the October 24, 2001 injunction because, if the ruling is permitted to stand in its entirety, Travelers Casualty and other similarly situated parties will not be permitted to go anywhere other than the Montgomery County Circuit Court to resolve the legal controversies at issue. The issue is not moot because the ruling has implications for future proceedings in this matter. Finally, the trial court erred in determining that paragraph III(C) of the CMO2 forbids all parties in the Montgomery County lawsuit from seeking redress elsewhere on any of the issues implicated in the underlying lawsuit. To the extent the court's October 24, 2001 injunction incorporates and emanates from this error, it is reversed. The matter is remanded with instructions to proceed in a manner that is consistent with the principles set out in this opinion.

Judgment reversed and remanded.

SHARPNACK, J., and SULLIVAN, J., concur.