

FILED

Jul 26 2017, 10:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

John R. Maley
Leah L. Seigel
Barnes & Thornburg, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Darryn L. Duchon
Indianapolis, Indiana

Monty K. Woolsey
Andrew R. Bloch
Cross, Pennamped, Woolsey &
Glazier, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Paternity of:
G.G.B.W. a Minor Child,

J.B.,

*Appellant-Petitioner,*

v.

S.W.,

*Appellee-Respondent.*

July 26, 2017

Court of Appeals Case No.
49A04-1611-JP-2474

Appeal from the Marion Circuit
Court

The Honorable Sheryl Lynch,
Judge

Trial Court Cause No.
49C01-1101-JP-3803

**Bailey, Judge.**

# Case Summary

J.B. ("Father") and S.W. ("Mother") are the parents of one daughter, G.G.B.W. ("Child"). In 2015, Father petitioned to modify legal custody of Child, and subsequently filed a contempt petition and motion for rule to show cause in which Father alleged that Mother was in violation of a paternity decree. The trial court denied Father's petitions and motion, and ordered Father to pay a portion of Mother's attorney fees. Father now appeals.

We affirm in part, reverse in part, and remand.

# Issues

Father presents the following restated issues:

I. Whether the trial court articulated an erroneous interpretation of the Decree and thereby abused its discretion in failing to find Mother in contempt;

II. Whether the trial court abused its discretion in denying Father's petition to modify legal custody; and

III. Whether the trial court abused its discretion in ordering Father to pay a portion of Mother's attorney fees.

# Facts and Procedural History

Father and Mother had a brief relationship while married to other spouses, and Child was born in 2007. Mother remained married and Father subsequently

remarried. In 2011, Father and Mother entered an Agreed Decree of Paternity concerning Child (the "Decree") that the trial court approved and incorporated into an order. The Decree contains the following provision relating to legal custody: "The parties shall share joint legal custody of [Child] . . . which shall be defined as follows: Mother must seek Father's input prior to Mother making any major medical, religious, or educational decisions for [Child]." Appellant's App. Vol. II at 47-48. The Decree also includes the following provision relating to vaccinations: "If the child attends a school that requires vaccinations for enrollment, and the child will be denied enrollment unless she receives the vaccinations, then the child will be given the required vaccinations for enrollment." Appellant's App. Vol. II at 51.

[5] Child was not vaccinated following her birth. At the time of the Decree, Child attended a Montessori school that did not require vaccinations. The following year, upon Father's request, Child was to attend kindergarten at a public school. The school required that its students be vaccinated but, pursuant to Indiana Code section 20-34-3-2, the school allowed an unvaccinated student to attend if a parent executed a form claiming a religious objection to immunization. Mother sought Father's consent to sign the form, but Father did not consent. Mother then signed the form, and Child began attending the school unvaccinated. In subsequent years, Mother submitted the form without consulting Father, and Child has continued to attend the public school.

[6] In early 2015, when Father learned that Child would be traveling on an extended European Disney Cruise, Father expressed concern to Mother about

Child remaining unvaccinated. On May 18, 2015, Father petitioned to modify legal custody of Child as to medical decisions only, alleging a substantial change in circumstances in that Child had not received any vaccinations since birth. The next month, Father learned that his wife was pregnant, and on July 29, 2015, Father filed a contempt petition alleging that Mother was violating the Decree because she did not "vaccinat[e] [Child] pursuant to" the Decree and because she "falsely advised the school of a religious affiliation to avoid vaccinating the child." Appellant's App. Vol. II at 57.

[7] During the pendency of Father's motion and contempt petition, Father and his wife became the parents of twins, a boy and a girl. The daughter was born healthy and could receive vaccinations on schedule, but the son could not be vaccinated due to a serious heart condition. Father was advised by a doctor that it was unsafe for the newborns to be around anyone unvaccinated, including Child. Acting on that advice, Father stopped exercising overnight parenting time and would not permit Child to physically meet the infants.

[8] On March 3, 2016, Father filed a motion for rule to show cause. In the motion, Father asserted generally the same grounds for contempt contained in his petition and alleged that Child's health was at risk due to being unvaccinated. Father also alleged that he was unable to exercise overnight parenting time with Child because Child was unvaccinated and posed a risk to his infants.

[9] The trial court held a hearing in May and June of 2016. At the hearing, Father called his son's doctor who testified in favor of vaccinations, and he called an

Episcopalian priest who testified that the Episcopalian faith—Mother's faith—has no tenet against vaccinations. Mother called two expert witnesses who testified about the risks of vaccination and the ineffectiveness of vaccines.

On October 6, 2016, the trial court denied Father's petition to modify custody, leaving the Decree unchanged. The trial court also denied Father's contempt petition and related motion for rule to show cause, reasoning that Mother complied with the Decree when she claimed a religious objection to vaccinating Child. Finally, the trial court ordered Father to contribute $10,000 toward Mother's attorney fees.

This appeal ensued.

# Discussion and Decision

## Standard of Review

Upon Mother's timely written request, the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). In reviewing findings made pursuant to this rule, "we first determine whether the evidence supports the findings and then whether findings support the judgment." *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009). We will "not set aside the findings or judgment unless clearly erroneous" and we give "due regard" to "the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). Findings of fact are clearly erroneous when there is no support for them in the record, either directly or by inference. *Steele-Giri v.*

*Steele*, 51 N.E.3d 119, 125 (Ind. 2016). A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. *In re Adoption of O.R.*, 16 N.E.3d 965, 973 (Ind. 2014). A judgment is also clearly erroneous when the trial court applies the wrong legal standard to properly found facts. *In re D.J. v. Indiana Dep't of Child Servs.*, 68 N.E.3d 574, 578 (Ind. 2017).

# Contempt

[13] Father challenges the trial court's contempt determination, arguing that the trial court misinterpreted the Decree when it failed to hold Mother in contempt.

[14] It is soundly within the discretion of the trial court to determine whether a party is in contempt, and we review the judgment under an abuse of discretion standard. *Reynolds v. Reynolds*, 64 N.E.3d 829, 832 (Ind. 2016). "We will reverse a trial court's contempt findings only if there is no evidence or inferences drawn therefrom to support them." *Hamilton v. Hamilton*, 914 N.E.2d 747, 755 (Ind. 2009). Additionally, because the trial court denied Father's petition and motion, Father appeals from a negative judgment. *See Comm'r, Dep't of Envtl. Mgmt. v. RLG, Inc.*, 755 N.E.2d 556, 559 (Ind. 2001). In such circumstances, we will reverse the judgment only if it is contrary to law— where the evidence leads to but one conclusion and the trial court reached the opposite conclusion. *Id.* Moreover, in conducting our review, we consider the evidence in the light most favorable to the appellee. *Id.*

[15] To be held in contempt, a party must have willfully disobeyed a court order. *City of Gary v. Major*, 822 N.E.2d 165, 170 (Ind. 2005). "The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated." *Id.*

[16] One of Father's arguments is that the plain language of the Decree "calls for vaccinations based on the school's requirements." Appellant's Br. at 22. Father directs us to the vaccination provision in the Decree, which reads: "If the child attends a school that requires vaccinations for enrollment, and the child will be denied enrollment unless she receives the vaccinations, then the child will be given the required vaccinations for enrollment." Appellant's App. Vol. II at 51. Father contends that this provision provides no exception. Mother responsively argues that Child was not denied enrollment because Mother submitted the religious objection form, and so because Child was not denied enrollment, the vaccination provision does not require Child's vaccination.

[17] It is important to note that this is a case of the trial court interpreting an agreement of the parties rather than an order of its own creation. "In the usual case, freedom of contract will, it is hoped, produce mutually acceptable accords, to which parties will voluntarily adhere." *Voigt v. Voigt*, 670 N.E.2d 1271, 1278 (Ind. 1996). There may be nuances to and purposes underlying the parties' agreement to which the trial judge may not be privy. *See id.* ("[T]he actual purpose lying behind any particular provision of a settlement agreement may

remain forever hidden from the trial judge. Indeed, it may be quite idiosyncratic."). Indiana Code section 31-14-10-1 provides that in a paternity action, the court shall conduct a hearing to determine the issues of child support, custody, and parenting time upon finding that a man is the child's biological father. However, the court may dispense with the hearing if the mother and father file a verified written stipulation or a joint petition resolving those issues. Ind. Code § 31-14-10-3. In that case, the court may approve the agreement if it is in the best interest of the child, *In re Paternity of M.R.A.*, 41 N.E.3d 287, 293 (Ind. Ct. App. 2015), and "shall incorporate provisions of the written stipulation or joint petition" into its orders, I.C. § 31-14-10-3. This is similar to the provisions of Indiana Code section 31-15-2-17(a) which allows parties to a dissolution to agree in writing to provisions for the custody and support of their children. Thus, we may look to caselaw discussing interpretation of settlement agreements in dissolution actions in addressing the issues presented by this paternity case.

[18] Settlement agreements are contractual in nature and, once incorporated into a trial court's final order, become binding on the parties. *Whittaker v. Whittaker*, 44 N.E.3d 716, 719 (Ind. Ct. App. 2015). The court that adopts the agreement retains jurisdiction to interpret the terms of the agreement and to enforce them. *Id*. To interpret a contract, the court first considers the parties' intent as expressed in the language of the agreement. *Schmidt v. Schmidt*, 812 N.E.2d 1074, 1080 (Ind. Ct. App. 2004). It must then read all the provisions as a whole to find an interpretation that harmonizes the contract's words and phrases and

gives effect to the parties' intentions as of the time they entered the agreement. *Id.* If the language is unambiguous, the intent of the parties must be determined from the four corners of the agreement. *Id.* The terms of an agreement are ambiguous "only when reasonably intelligent persons would honestly differ as to the meaning of those terms." *Id.* Reviewing the terms of a written contract is a pure question of law and therefore, our standard of review is *de novo*. *Whittaker*, 44 N.E.3d at 719.

[19] Here, the Decree gives Mother latitude to make a range of decisions without input—and to make major medical, religious, and educational decisions after consulting Father. The vaccination provision, however, is a specific exception to this general rule. "It is well settled that when interpreting a contract, specific terms control over general terms." *GPI at Danville Crossing, L.P. v. W. Cent. Conservancy Dist.*, 867 N.E.2d 645, 651 (Ind. Ct. App. 2007), *trans. denied*. Thus, where the vaccination provision applies, the vaccination provision controls—without reference to the general legal-custody provision. *See id.*

[20] The vaccination provision became applicable when Child reached school age, and it links the vaccination requirement to that of the school. Under the provision, Child could attend the Montessori school unvaccinated because vaccination was not a condition of enrollment. The public school, however, required vaccination, and the only reason Child could attend was because Mother claimed a religious objection to vaccination. "[U]nless the contract provides otherwise, all applicable law in force at the time the agreement is made impliedly forms a part of the agreement, because the parties are presumed to

have had the law in mind." *Schwartz v. Heeter*, 994 N.E.2d 1102, 1106 (Ind. 2013) (citation and internal quotation marks omitted). The religious objection exemption to the vaccination requirement has been in effect since 2005. Therefore, the parties are presumed to have been aware of it when they entered into their agreement in 2011. If the parties intended the religious objection exemption to apply, they most likely would not have included the vaccination provision in the agreement at all, because a religious objection would *always* trump a school's vaccination requirement and the provision would be meaningless. At the very least, the parties could have provided for this exemption to the vaccination requirement in their agreement. Yet, the vaccination provision of the Decree is silent as to the religious objection exemption. Because there is no such exception in the language of the agreement and reading one in would void the provision, and because Mother's wide latitude for decision-making is limited in this instance by the specific vaccination provision, the Decree accordingly requires that Child be vaccinated based on her school's requirements.

[21] The vaccination provision is clear that Child must be vaccinated if her school requires it regardless of the existence of the statutory exemption. We acknowledge, as the trial court did, that the religious objection statute does not impose a good faith requirement in order to invoke the exemption. We further acknowledge the trial court found "Mother's testimony regarding her personal religious beliefs and how those affect her opinion on vaccinations to be sincere and valid to her." Appellant's App. Vol. II at 40. Although Mother's "religious

objection" to vaccinations seems dubious given evidence that the religion she professes to practice does *not* in fact have a tenet objecting to administering vaccinations, the proper use and application of the religious exemption here is not at issue. Whether or not Mother would otherwise be entitled to invoke a religious objection to vaccinations, she is not entitled to do so here where she is subject to a court order approving an agreement she willingly entered into that requires vaccinations under these circumstances. Based on our interpretation of the contract between the parties, we conclude the trial court's failure to find Mother in contempt for submitting the religious objection form to circumvent the agreement is contrary to law.

## Custody Modification

[22] Father contends that the trial court abused its discretion in denying his petition to modify legal custody of Child based on Child not receiving any vaccinations since birth. We review decisions concerning custody modifications for an abuse of discretion, "with a 'preference for granting latitude and deference to our trial judges in family law matters.'" *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178 (Ind. 1993)). Following the establishment of paternity, a trial court may modify a child-custody order only upon a showing that modification is in the child's best interests and that there has been a substantial change in one or more of the factors that the court may consider under Indiana Code section 31-14-13-2. I.C. § 31-14-13-6. Those factors include:

(1) The age and sex of the child.

(2) The wishes of the child's parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

    (A) the child's parents;

    (B) the child's siblings; and

    (C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

I.C. § 31-14-13-2.

[23] With respect to modification of legal custody, a trial court should specifically consider whether there has also been a change in one of the statutory factors governing awards of joint legal custody. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1259-60 (Ind. Ct. App. 2010). In a paternity case, those factors are:

(1) the fitness and suitability of each of the persons awarded joint legal custody;

(2) whether the persons awarded joint legal custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint legal custody;

(5) whether the persons awarded joint legal custody:

(A) live in close proximity to each other; and

(B) plan to continue to do so;

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint legal custody; and

(7) whether there is a pattern of domestic or family violence.

I.C. § 31-14-13-2.3(c).

[24] Here, Mother and Father shared joint legal custody of Child, which was defined as requiring Mother to seek Father's input before making any major medical, religious, or educational decisions for Child. We concluded above that the Decree requires that Child be vaccinated based on her school's requirements and that Mother is in contempt for submitting the religious objection form in

order to circumvent the parties' agreement. Based on Mother's actions, there is a substantial change in Mother's ability to communicate and cooperate with Father in advancing Child's welfare. For the same reasons, modification of legal custody is in Child's best interests. Accordingly, the trial court abused its discretion in denying Father's petition to modify legal custody of Child for the limited purpose of making medical decisions concerning vaccinations.

## Attorney Fees

[25] Father next argues that the trial court abused its discretion when it ordered him to contribute $10,000 toward Mother's attorney fees. We review a trial court's award of attorney's fees for an abuse of discretion. *In re Paternity of M.R.A.*, 41 N.E.3d at 296. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *DePuy Orthopaedics, Inc. v. Brown*, 29 N.E.3d 729, 731-32 (Ind. 2015).

[26] Pursuant to Indiana Code section 31-14-18-2, a court in a paternity action may order a party to pay "(1) a reasonable amount for the cost to the other party of maintaining an action under this article; and (2) a reasonable amount for attorney's fees, including amounts for legal services provided and costs incurred, before the commencement of the proceedings or after entry of judgment." In awarding attorney fees, the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such factors

that bear on the reasonableness of the award. *Kieffer v. Trockman*, 56 N.E.3d 27, 33 (Ind. Ct. App. 2016). "The trial court may also consider any misconduct by one party that causes the other party to directly incur additional fees." *In re Paternity of M.R.A.*, 41 N.E.3d at 296. Moreover, "[w]hen one party is in a superior position to pay fees over the other party, an award of attorney fees is proper." *A.G.R. ex rel. Conflenti v. Huff*, 815 N.E.2d 120, 127-28 (Ind. Ct. App. 2004), *trans. denied*.

[27] In ordering Father to pay $10,000 toward Mother's attorney fees, the trial court found "that Father is in a superior economic position to Mother and that there is a significant disparity in their incomes." Appellant's App. Vol. II at 45. The trial court determined that Mother earned an annual income of approximately $60,000 and Father earned an annual income of approximately $150,000. The trial court also found that Mother incurred approximately $42,000 in attorney fees and Father incurred approximately $49,000 in attorney fees.

[28] Father argues that the $10,000 fee award is unreasonable because there was evidence that Mother's household income is higher than his, and that Mother could potentially earn twice as much if she were not a full-time parent. Father also asserts that Mother engaged in misconduct by submitting the religious objection form.

[29] Had the record included only the disparity in Mother's and Father's personal incomes, we might have affirmed the attorney fee award. Here, however, Mother contemptuously circumvented the Decree, causing Father to initiate the

instant proceedings—which Mother did not successfully defend. In light of Mother's misconduct, we conclude that the trial court abused its discretion in ordering Father to contribute $10,000 toward her attorney fees.

# Conclusion

[30] The trial court abused its discretion when it denied Father's contempt petition and related motion for rule to show cause, based on its misinterpretation of the Decree when analyzing the issues of this case. The trial court also abused its discretion in denying Father's petition to modify legal custody of Child for the limited purpose of making medical vaccination decisions. Moreover, the trial court abused its discretion in requiring Father to contribute toward Mother's attorney fees. Neither party challenges the denial of Father's request for an order of estoppel, and we accordingly leave that portion of the trial court's order undisturbed.

[31] Affirmed in part, reversed in part, and remanded.

Vaidik, C.J., and Robb, J., concur.