# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**
Mar 13 2018, 8:05 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

David M. Payne
Ryan & Payne
Marion, Indiana

ATTORNEY FOR APPELLEE

William T. Myers
Marion, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Paternity of G.A.M. and G.A.M. (Minor Children): | March 13, 2018 |
| | Court of Appeals Case No. 27A05-1706-JP-1382 |
| Whitney McCreary, | Appeal from the Grant Superior Court |
| *Appellant-Petitioner,* | |
| v. | The Honorable Dana J. Kenworthy, Judge |
| Raphael Ramirez, | The Honorable Brian F. McLane, Magistrate |
| *Appellee-Respondent.* | Trial Court Cause No. 27D02-1304-JP-37 |

**Bailey, Judge.**

# Case Summary

Whitney McCreary ("Mother") appeals a modification of custody order regarding her twin children, G.A.M. ("Son") and G.A.M. ("Daughter") (collectively "the children"). The sole, restated issue she raises is whether the trial court clearly erred when it granted Raphael Ramirez's ("Father") petition to modify child custody.

We affirm.

# Facts and Procedural History

Mother and Father are the biological parents of the children, who were born on February 23, 2013. Father's paternity of the children was established in February of 2015, following which the trial court awarded Mother physical custody of the children and Father parenting time pursuant to the Indiana Parenting Time Guidelines.

On September 19, 2016, Father filed an emergency petition for child custody. The trial court appointed a guardian ad litem ("GAL"), and, in a consent order dated November 2, 2016, the trial court awarded the parties joint legal custody and awarded Father supplemental parenting time that included make-up parenting time. The GAL filed her report with the court on April 21, 2017, and the trial court held a hearing on Father's petition to modify custody on May 2. On May 31, 2017, the trial court entered its Order on Custody, Parenting Time

and Child Support, in which it made the following relevant findings of fact and conclusions of law:

**Findings of Fact**

4. Mother currently resides with her mother in a home in Marion, Indiana. She has resided there for three years. She resides there with her mother and the parties' two children.

5. Mother has not been employed since June 2016.

6. Father resides in Indianapolis in a three[-]bedroom home. His mother lives in Avon, Indiana.

7. Father is employed at a software company in Indianapolis.

8. Father began seeing the children when they were about 8 to 9 months old.

9. [Son] has special needs. He is delayed in his speech and social skills and has demonstrated characteristics of autism and seizure disorder. The child's physician had referred the child to First Steps and Easter Seals, but Mother did not follow up with services. The child began services at First Steps but Mother was not pleased with the school-like setting and removed the child. This occurred in early 2016 and Mother has not restarted services for the child since that time.

10. Mother alleged Father had sexually/physically abused [Daughter]. This matter was referred to the Department of Child Services and was unsubstantiated by them. Mother

still believes that Father has sexually molested the child, regardless of what the investigation determined. Mother had shown the 4-year-old girl a picture of a man's penis and asked her to identify it.

11. Mother has demonstrated behaviors that are concerning to the court. Specifically:

a. Mother has demonstrated indications of paranoia. Mother believed that coworkers were talking about her but there was no evidence provided to substantiate this claim. Mother went so far as to make a police report on the situation, but she does not recall making that report. Mother referred to the incident as one involving "childish stalking." Further, Mother believes that someone has "hacked" her computer and statements made by her would automatically be uploaded to the website, Pinterest. In June 2016[,] Mother indicated to Father that she was being stalked by undercover agents. She indicated that special agents were following her and she was afraid they would attack the twins. She told Father "(A)sk God to pray for me."

b. At an exchange of the children, Mother asked [Daughter], "Is Daddy touching you[r] cuckoo again?" There was contradictory testimony, but Mother allegedly threw rocks with words "Faith" and "Wisdom" at Father's feet. Mother allegedly then pulled a bat from the trunk of her car and [Daughter] intervened. Mother denies these allegations but the court finds Father's testimony persuasive.

c. Mother has called Father at midnight or 1 AM and has accused him of harming the children.

d. Mother communicated to Father that she was "(t)rying to get right with God so I can hold the twins['] hands as they go into heaven."[1]

## Conclusions of Law[2]

12. Indiana Code §31-14-13-2 provides that a court shall determine custody in accordance with the best interests of the child, and sets forth multiple factors to be considered in this determination …

13. The children [are] a boy and girl, both 4 years of age.

14. Both parents would like the children to reside with them. Due to the children's young age, no weight is given to their wishes at this time.

15. The children seem to have a good relationship with both parents and the parties' mothers.

16. Mother['s] mental health is a significant concern. Mother has demonstrated irrational behaviors. Mother is convinced that Father has abused the children, especially [Daughter]. Mother has gone so far as to show the child a [photograph of a] man's penis in an attempt to prove the

---

[1] The GAL report stated that Mother's text to Father "said something such as 'trying to get right with God so I can hold the twins['] hands *on our way to* Heaven." Appellant's Confid. Supp. App. Vol II at 17 (emphasis added).

[2] We note that paragraphs 13-15 and 17 are findings of fact, even though they are listed under "conclusions of law." And paragraph 16 contains mixed factual findings and legal conclusions. We treat all findings of fact as such, even if they are contained in the conclusions of law section of the opinion. *See Coachman Indus., Inc. v. Crown Steel Co.*, 577 N.E.2d 602, 605 (Ind. Ct. App. 1991) (citing *In re Marriage of Miles*, 362 N.E.2d 171 (Ind. Ct. App. 1977), *trans. denied*) (holding facts not stated in findings may be supplied by conclusions of law).

child was molested. Mother believes she has been stalked by agents, and that her statements are being automatically uploaded to the web. Mother has acted violently toward Father in the presence of the children. Mother's absolute belief that Father is a danger to the children has resulted in her acting in a manner that threatens the children's emotional development.

17. Mother is unable or unwilling to seek needed medical treatment for [Son].

18. For the foregoing reasons the court finds that there is a substantial change of circumstances in the children's relationship with both parents, and Mother's demonstrated lack of emotional stability. It is in the best interests, and the court orders, that custody be modified. Father is awarded custody of both children.

19. Further, the court finds that unrestricted parenting time would pose a substantial risk to the children's emotional development and physical well-being. Mother is directed to obtain a psychological evaluation prior to a parenting time schedule being arranged. Given the restriction in Mother's parenting time, the court names the paternal grandmother as the temporary guardian in the event Father is unable to care for the children.[3]

\*\*\*

---

[3] On February 16, 2018, Father filed a "Supplemental Memorandum" in this Court related solely to the parenting time order. However, Mother does not appeal the trial court's parenting time order. Moreover, Father has no authority for the filing. *See* Ind. Appellate Rules 45, 46, 47. Therefore, we granted Mother's Motion to Strike Appellee's Supplemental Memorandum.

Appellant's App., Vol. II at 95-100. This appeal ensued. We provide additional facts as necessary.

# Discussion and Decision

Mother asserts that the trial court erred when it modified the parties' custody order from joint legal custody—with Mother having physical custody—to Father having sole custody. Our standard of review in a custody modification is generally for abuse of discretion. *J.B. v. S.W.* ("*In re Paternity of G.G.B.W.*"), 80 N.E.3d 264, 271 (Ind. Ct. App. 2017), *trans. denied*. However, when the trial court sua sponte enters findings and conclusions pursuant to Indiana Trial Rule 52, as it did here,[4] we apply a two-tiered standard of review to any issue covered by the findings. *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). That is, we look to "whether the evidence supports the findings, and whether the findings support the judgment." *Id.* "Any issue not covered by the findings is reviewed under the general judgment standard, meaning a reviewing court should affirm based on any legal theory supported by the evidence." *Id.* at 123-24.

In conducting our review, we "are not to reweigh the evidence." *Id.* at 124. And we "consider only the evidence and reasonable inferences that are most favorable to the judgment," *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016), giving "due regard . . . to the opportunity of the trial court to judge the credibility of

---

[4] The record does not disclose, and the parties do not tell us, whether either party requested findings. Therefore, we assume the trial court entered findings sua sponte.

the witnesses," T.R. 52(A). Moreover, we "shall not set aside the findings or judgment unless clearly erroneous." *Id.* A trial court's findings are clearly erroneous when the record contains no facts to support them either directly or by inference; a judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Town of Fortville v. Certain Fortville Annexation Territory Landowners*, 51 N.E.3d 1195, 1198 (Ind. 2016). Ultimately, we will reverse only upon a showing of clear error: "that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992).

[7] In *In re Paternity of G.G.B.W.*, 80 N.E.3d at 271-72, we noted that the trial court must consider three statutes when modifying legal custody in a paternity case: Indiana Code Sections 31-14-13-6, -2, and 2.3(c).[5] Indiana Code Section 31-14-13-6 states in relevant part:

> (a) The court may not modify a child custody order unless:
>
>> (1) the modification is in the best interests of the child; and
>>
>> (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 . . . of this chapter.

---

[5] We note that both parties incorrectly cited to Article 17 of Title 31, which is applicable to custody in dissolution of marriage, legal separation, or child support actions, *see* I.C. § 31-17-2-3, rather than Article 14, which is applicable to paternity actions.

Indiana Code Section 31-14-13-2 contains factors that the trial court must consider when making a custody order, namely:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parent or parents;
>>
>> (B) the child's sibling; and
>>
>> (C) any other person who may significantly affect the child's best interests.
>
> (5) The child's adjustment to home, school, and community.
>
> (6) The mental and physical health of all individuals involved.
>
> (7) Evidence of a pattern of domestic or family violence by either parent.
>
> (8) Evidence that the child has been cared for by a de facto custodian . . .

Finally, Indiana Code Section 31-14-13-2.3(c) contains factors that are pertinent specifically to joint legal custody:

(1) the fitness and suitability of each of the persons awarded joint custody;

(2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

(5) whether the persons awarded joint custody:

(A) live in close proximity to each other; and

(B) plan to continue to do so;

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody; and

(7) whether there is a pattern of domestic or family violence.

[8] Here, the trial court concluded that modification of custody from joint legal custody to sole custody with Father was in the best interests of the children and that there had been a substantial change in the factors contained in Indiana Code Section 31-14-13-2. The court based those conclusions on its findings that: Mother is "unable or unwilling" to seek needed medical treatment for Son, Appellant's App., Vol. II at 98; Mother's actions were causing a

substantial risk to the children's emotional development and physical well-being; and Mother's mental health is a significant concern. Mother challenges these factual findings, and we address each in turn.

[9] First, the evidence supports the trial court's finding that Mother was not seeking needed medical treatment for Son. The GAL, who contacted Son's educational providers and medical providers, reported that Son received services for his autism at First Steps until he was three years old; however, after that point, Mother took him out of a special education pre-school program and never re-enrolled him in any other treatment for his autism. Although Mother contacted Hope Bridge to provide assistance to Son for his special needs, she did not follow through with the necessary steps for Son to actually obtain those services. Moreover, Son has a seizure disorder for which he was prescribed medication. However, the evidence establishes that at various points Mother reduced or discontinued Son's medication without doctor approval. Thus, the trial court did not err when it found that Mother was unwilling or unable to provide Son with necessary medical care, one of the factors that may support a change in custody. *See* I.C. § 31-14-13-2(6). Mother's contentions to the contrary are simply requests that we reweigh the evidence and judge the credibility of witnesses, which we will not do. *Steele-Giri*, 51 N.E.3d at 123.

[10] Second, the evidence supports the trial court's findings that Mother's statements and/or actions demonstrated a lack of emotional stability that "threaten[s] the children's emotional development." Appellant's App., Vol. II at 98. There is no evidence in the record that Mother has been diagnosed with a mental illness.

However, the trial court found—based on the GAL report, Father's testimony, and Mother's own admissions—that Mother exhibits signs of paranoia. She believes that "someone hacked her computer" and that verbal statements she made in her home were "mysteriously" uploaded to the Pinterest website. Appellant's Br. at 17.[6] She further believes that "people were taking pictures of her," "people were after her," and "they would infiltrate the company" where she worked. *Id.* Mother also believes that she is being stalked by "special agents." *Id.* And Mother does not deny making such statements and holding such beliefs.

[11] Although there is no evidence that the above seemingly paranoid statements and beliefs have caused harm to the children, the GAL also reported, and Father testified, that, in the children's presence, Mother threw rocks at Father and threatened him with a baseball bat until her young Daughter intervened. Although Mother denies those actions, the trial court found Father's testimony on the matter more credible. Moreover, the GAL opined that Mother's insistence on showing her young Daughter a picture of a penis in an attempt to prove Father was molesting Daughter—even after the Department of Child Services ("DCS") investigated Father three times for Mother's allegations and

---

[6] Mother's admissions in her brief cite to the transcript of her testimony at the May 2, 2017, custody modification hearing. However, that transcript has not been filed with this court; rather, it appears the trial court clerk erroneously filed a transcript from proceedings that took place in this case on October 19, 2017, well after Mother filed this appeal. However, because Mother admits on appeal that she made those statements during her testimony on May 2, 2017, and because Mother still maintains on appeal that there is no evidence those statements are not true statements of fact, see Appellant's Br. at 17, we need not delay this appeal to obtain the correct transcript.

found each time they were unsubstantiated—could cause Daughter emotional harm. Further, the GAL, who reviewed texts from Mother to Father, also noted that "(o)ne of [Mother's] most concerning texts said something such as 'trying to get right with God so I can hold the twins['] hands on our way to Heaven.'" Appellant's Confid. Supp. App. Vol II at 17. Given that evidence, the trial court did not err in finding that Mother's emotional instability—as shown by her statements and actions—threatens the children's emotional well-being. *See* I.C. §§ 31-14-13-2(6) and (7); 31-14-13-2.3(c)(1), (6) and (7). Again, Mother's contentions to the contrary are requests that we impermissibly reweigh the evidence and judge witness credibility.

# Conclusion

[12] There is evidentiary support for the trial court's findings that Mother failed to provide necessary medical care for Son and that Mother's emotional instability threatens the children's emotional—and possibly physical—well-being. And those findings support the trial court's conclusions that a substantial change in circumstances justifies awarding custody to Father, and that such a modification of custody is in the children's best interest.

[13] Affirmed.

Kirsch, J., and Pyle, J., concur.