## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 30 2018, 8:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Charles Bugby
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re The Paternity of: K.B.: | April 30, 2018 |
| | Court of Appeals Case No. 18A02-1704-JP-721 |
| Kyle Burkholder, | |
| *Appellant-Petitioner,* | Appeal from the Delaware Circuit Court |
| v. | The Honorable Marianne Voorhees, Judge |
| Amanda Jensma, | Trial Court Cause No. 18C01-1503-JP-50 |
| *Appellee-Respondent.* | |

**Robb, Judge.**

# Case Summary and Issues

[1] Kyle Burkholder ("Father") and Amanda Jensma ("Mother") are the parents of K.B. and share joint legal custody with Mother having primary physical custody. In 2015, Father sought, among other things, a change of custody. After a hearing, the trial court granted Mother sole legal custody and ordered Father to pay Mother's attorney fees. Father now appeals, raising two issues: 1) whether the trial court abused its discretion in modifying legal custody; and 2) whether the trial court abused its discretion in ordering Father to pay Mother's attorney fees. Concluding the trial court did not abuse its discretion with respect to the modification of legal custody or attorney fees, we affirm.

# Facts and Procedural History

[2] We begin by noting that although Father's brief contains a section headed "Statement of Facts," Brief of Appellant at 4, there are no facts contained therein. Instead, the "Statement of Facts" is a recitation of the procedural history of the case in the trial court, beginning with the filing of Father's petition to modify custody.[1] This section concludes with the statement, "Facts will be supplemented in the argument for brevity." *Id.* at 6. Although the

---

[1] This information belongs in the "Statement of the Case" section of the brief, *see* Ind. Appellate Rule 46(A)(5), (6), but in this case, the "Statement of the Case" is more a Summary of the Argument, a section which does not appear at all in this brief. Additionally, we note that although in some cases, the relevant facts may be the procedural facts, this is not one of those cases, as the question of which party should have custody of a child is *highly* fact sensitive. *See Steele-Giri v. Steele*, 51 N.E.3d 119, 125 (Ind. 2016).

Argument section does include some facts, they are not presented in a narrative fashion as required by rule, and they are not stated in accordance with the standard of review, but rather are presented in the light most favorable to Father. *See* App. R. 46(A)(6)(b), (c). The purpose of our appellate rules is to aid and expedite review and to relieve this court of the burden of searching the record and briefing the case. *Thacker v. Wentzel*, 797 N.E.2d 342, 345 (Ind. Ct. App. 2003).[2] Unfortunately, Mother has not filed an appellee's brief to assist this court in understanding the facts underlying the issues in this appeal. We have not undertaken the burden of searching the record for the facts, but because of the importance of the issue presented, we have attempted to discern the facts as clearly as we can from the brief and the trial court's order.

[3] K.B. was born out of wedlock in May 2014, and Father and Mother shared joint legal custody of K.B. with Mother having primary physical custody. It appears, with parenting time, they spend approximately equal time with K.B. K.B. has been referred to Indiana's First Steps program and has certain medical issues. Mother and Father disagree about the diagnosis and/or appropriate treatment for K.B. In March 2016, Father filed his petition for change of custody alleging Mother had failed to enroll K.B. in the First Steps program or was not including Father in the process, and further alleging Mother had failed to follow through on medical treatment. He therefore asserted "circumstances have changed to make previous orders in this matter unreasonable" and

---

[2] We therefore remind counsel to follow the dictates of the rules in future filings with this court.

requested an order granting him custody of K.B. Appellant's Appendix, Volume 2 at 24. Mother responded by filing her own petition to modify custody to grant her sole legal custody of K.B., alleging Father "fails and/or refuses to discuss important matters regarding [K.B.], the most recent matter regarding the minor child's health care." *Id.* at 31. The parties each filed several Petitions for Citation, alleging shortcomings by the other.

[4] The trial court heard testimony over three days. The trial court's order sums up the situation after the second day of hearings:

> Shockingly, after Five Hours and Thirty Minutes of evidence during two separate hearings, in which the parties fiercely argued whether [K.B.] should see an ENT, [Father] took matters into his own hands and took [K.B.] to an ENT. (Using a rather unorthodox if not suspect method for the referral, i.e., asking a friend who is an anesthesiologist to make the referral.) This conduct shows total disrespect for the Court and Court orders and to the child's mother as well. The Court cannot condone this conduct. For this behavior, [Father] will now lose his right to joint legal custody and will be responsible for [Mother's] total attorney fee bill.

> At the conclusion of [the second day of] hearing, [Father] asked for one more hearing date so he could recall Dr. Byrn about the ENT issue and call his fiancé [sic] in rebuttal. In open court, the parties were given . . . the next date. Clearly, the ENT issue was still open and unresolved and the prior order that neither parent take [K.B.] to a physician without the other's consent and knowledge was in full force and effect. [Father] admitted during the [final] hearing, that he had violated this order when he took [K.B.] to Dr. Whiteman.

*Id.* at 13-14.

[5] With respect to the change of custody, the trial court elaborated:

> 12. Custody Issues: [Father's] Petition to Modify Custody is denied. No change in circumstances has occurred to support a custody modification in [Father's] favor.
>
> As to [Mother's] Petition to Modify Joint Legal Custody into Sole Legal and Physical Custody, it is apparent the parties cannot work together and communicate concerning [K.B.'s] issues. [Mother] is following what [K.B.'s] pediatrician has advised, and [Father] cannot wait and follow the pediatrician's guidance but wants answers and tests and results now. [Mother] has expressed valid concerns, if [Father] continues to have joint legal custody, that he may submit [K.B.] to further testing and procedures without her approval and knowledge. [Father] has demonstrated he will violate orders, and he has admitted he violated the Court order.
>
> [Mother's] Petition to Modify is well taken and should be and hereby is granted. [Mother] shall have Sole Legal and Physical Custody of [K.B.] [Mother] shall continue to discuss issues regarding [K.B.] with [Father] and listen to his input, but she will make the final decisions.

*Id.* at 17-18.

[6] And with respect to the attorney fee request, the trial court found:

> Based upon the above findings, the Court finds [Father] disregarded a court order not only once, but twice, by taking [K.B.] to physicians other than [his pediatrician] without [Mother's] knowledge and consent. [Father's] conduct has not advanced [K.B.'s] best interests in any way . . . .

[Father] should pay and hold [Mother] harmless for the fees she owes [her attorney]. Pursuant to her fee Affidavit, which the Court finds reasonable in time and rate, the Court finds [Father] should pay [Mother's attorney] $3,919.00 on or before July 31, 2017.

*Id.* at 19. Father now appeals.

# Discussion and Decision

## I. Change of Custody

Father claims the trial court abused its discretion in granting sole legal custody of K.B. to Mother. We review custody modifications for an abuse of discretion "with a preference for granting latitude and deference to our trial judges in family law matters." *Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011), *trans. denied*. This is because it is the trial court that observes the parties' conduct and demeanor and hears their testimony firsthand. *In re Paternity of C.S.*, 964 N.E.2d 879, 883 (Ind. Ct. App. 2012), *trans. denied*. We will not reweigh the evidence or judge the credibility of the witnesses. *Id.* Rather, we will reverse the trial court's custody determination only if the decision is "clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom." *Id.* (citation omitted). "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). It is not impossible to reverse a trial court's decision regarding child custody on appeal,

but given our deferential standard of review, it is relatively rare. *See Montgomery v. Montgomery*, 59 N.E.3d 343, 350 (Ind. Ct. App. 2016), *trans. denied*.

[8] When modifying custody, the trial court must consider three statutes: 1) Indiana Code section 31-14-13-6, which states modification is only appropriate when it is in the best interests of the child and there is a substantial change in one or more of the factors considered when making an initial custody order; 2) Indiana Code section 31-14-13-2, the factors for making an initial custody determination; and 3) Indiana Code section 31-14-13-2.3, the factors to be considered in awarding joint custody. *See Miller v. Carpenter*, 965 N.E.2d 104, 109 (Ind. Ct. App. 2012) (discussing modification in a dissolution context, citing dissolution statutes which are identical in all relevant respects to the statutes relevant to paternity cases). Particularly relevant to whether a court should modify joint legal custody to sole legal custody is whether there has been a substantial change in one or more of the factors the trial court considered when making the initial award of joint custody. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1260 (Ind. Ct. App. 2010). Those factors are:

> (a) [T]he court may award legal custody of a child jointly if the court finds that an award of joint legal custody would be in the best interest of the child.
>
> * * *
>
> (c) In determining whether an award of joint legal custody . . . would be in the best interest of the child, the court shall consider it a matter of primary, but not determinative, importance that the

persons awarded joint legal custody have agreed to an award of joint legal custody. The court shall also consider:

(1) the fitness and suitability of each of the persons awarded joint legal custody;

(2) whether the persons awarded joint legal custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint legal custody;

(5) whether the persons awarded joint legal custody:
     (A) live in close proximity to each other; and
     (B) plan to continue to do so;

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint legal custody; and

(7) whether there is a pattern of domestic or family violence.

Ind. Code § 31-14-13-2.3.

[9] In *G.G.B.W. v. S.W.*, 80 N.E.3d 264 (Ind. Ct. App. 2017), *trans. denied*, we considered whether legal custody of a child should have been modified from joint legal custody to sole legal custody in father when mother disregarded the provisions of the paternity decree that required the child to be vaccinated based

on her school's requirements and failed to seek father's input before making the decision to submit a religious exemption form to the school in order to circumvent the agreement. We concluded legal custody should be modified, concluding that "[b]ased on [m]other's actions, there is a substantial change in [m]other's ability to communicate and cooperate with [f]ather in advancing [c]hild's welfare." *Id.* at 272.

[10] The facts of this case are similar. Father made a unilateral medical decision without consulting Mother and in contravention of the parties' agreement, the trial court's orders, and the definition and purpose of joint legal custody. *See* Ind. Code § 31-9-2-67 (defining "joint legal custody" as "share[d] authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, healthcare, and religious training"). The facts as presented to us do not give us sufficient reason to second-guess the trial court's decision to modify legal custody in favor of Mother.

## II. Attorney Fees

[11] Father also contends the trial court abused its discretion in ordering him to pay Mother's attorney fees. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *G.G.B.W.*, 80 N.E.3d at 272.

[12] Each of the petitions filed in the trial court came with a request for attorney fees. *See* Appellant's App., Vol. 2 at 24 (Father's petition for change of

custody); 31 (Mother's petition to modify joint legal custody); 29 and 37 (Father's petitions for citation against Mother); 35-36 and 40-41 (Mother's petitions for citation against Father). Pursuant to Indiana Code section 31-14-18-2(a)(2), the court in a paternity action may order a party to pay a reasonable amount for attorney fees incurred by the other party. In making such an award, the trial court should consider the parties' resources, their economic conditions, their respective earning abilities, and other factors that bear on the reasonableness of the award. *In re Paternity of S.A.M.*, 85 N.E.3d 879, 890 (Ind. Ct. App. 2017). The court may also consider any misconduct by one party that causes the other party to directly incur fees. *Id.*

[13] In addition, civil contempt is "the willful disobedience of any lawfully entered court order of which the offender has notice." *Winslow v. Fifer*, 969 N.E.2d 1087, 1093 (Ind. Ct. App. 2012), *trans. denied*. Findings of contempt are within the sound discretion of the trial court, and trial courts have inherent authority to award attorney fees as a sanction for a finding of civil contempt. *Id.*

[14] It appears the trial court ordered Father to pay Mother's attorney fees as a sanction for disobeying the court's order regarding healthcare decisions for K.B. After the hearings in July and October, Father asked for an additional hearing so he could re-call K.B.'s pediatrician regarding the medical issue. The trial court granted Father's request and set a hearing for this purpose.[3] Despite

---

[3] The hearing was originally set for December but was ultimately not held until February. K.B.'s pediatrician did not appear and testify at the February hearing.

prolonging the proceedings by his own request, Father did not wait until after that hearing to find out the court's ruling—instead, Father defied the parties' agreement and the court's orders and took K.B. to a specialist without Mother's knowledge or consent after getting a referral under irregular circumstances. In light of these facts, the trial court did not abuse its discretion under either Indiana Code section 31-14-18-2 or its civil contempt powers by ordering Father to pay Mother's attorney fees.

# Conclusion

[15] The trial court did not abuse its discretion in modifying the joint legal custody arrangement the parties had for sole legal custody in Mother given the substantial change in the parties' ability to communicate and cooperate for K.B.'s welfare. The trial court also did not abuse its discretion in ordering Father to pay Mother's attorney fees. Accordingly, the judgment of the trial court is affirmed.

[16] Affirmed.

Najam, J., and Altice, J., concur.