**Robert T. HOLY, Appellant (Respondent Below),**

v.

**Joyce A. (Holy) LANNING, Appellee (Petitioner Below).**

**No. 52A02–8905–CV–221.**

Court of Appeals of Indiana, Second District.

April 2, 1990.

what result would be reached in the present case under the current provisions of the UCC.

Jeffry G. Price, Peru, for appellant.

Patrick J. Roberts, Peru, for appellee.

SHIELDS, Presiding Judge.

Robert T. Holy appeals a judgment against him for arrearage in child support in the amount of $5,415.

We reverse in part and affirm in part.

## ISSUE

The issue, restated, is whether the trial court erred in not crediting Robert with overpayments on his pre-existing support arrearage.

## FACTS

Robert and Joyce Holy were divorced in 1971. The decree ordered Robert to pay $135 per month child support to the clerk of the court. Joyce initiated this action to collect delinquent child support payments. After a hearing, the trial court entered a judgment against Robert in the amount of $5,415. In support of its judgment the trial court made the following findings:

1. The Respondent issued a "bad check" as a support payment in the amount of $330.00 in January, 1975.

2. That Respondent failed to pay support in November and December, 1975, in the total amount of $270.00.

3. That Respondent failed to pay support during 1976 in the amount of $1,620.00.

4. That Respondent failed to pay support from January though July 1977 in the amount of $945.00.

5. That Respondent was deficient in the payments as ordered at a rate of $35.00 per month from August, 1977, through January, 1979, in the total amount of $630.00.

6. That Respondent failed to pay support as previously ordered for the following months and years: August through October, 1979; April and June, 1980; July through November, 1984; June and August, 1985.

7. That Respondents reported overpayments have been considered, but should not be applied towards the above delinquency.

Record at 19–20.

Uncontroverted evidence supports the trial court's findings 2 through 6 inclusive. In addition, the evidence is uncontroverted that Robert paid $150 per month from February 1975 through October 1975; $250 per month from February 1979 through July 1979; $200 per month from January 1981 through June 1984; and a total overpayment of $580 for the months of February, March and April 1985.

## DISCUSSION

In essence, Robert claims the trial court erred in not crediting his overpayments on monthly support from and after February 1975 to any pre-existing arrearage.

The rule is that overpayments cannot be applied prospectively to support not due at the time of the overpayment.[1]

[A]ny excess payment made [has] to be considered a gratuity or at least a voluntary contribution for the support of the children, and not a prepayment of future support obligations. If non-court approved prepayments, such as those [here] were to be permitted, it would be possible for a parent, who is obligated to pay

---

1. Therefore, Robert's argument of credit for monies paid from 1971 to 1975 is unfounded because no finding was made of an arrearage prior to November 1975.

support, to build up a substantial credit, then suddenly refuse to make support payments for several weeks, months, or even years, thus thwarting the court's purpose in setting the payments at certain specified intervals, that of providing regular, uninterrupted income for the benefit of that parent's children, who are in the custody of another. The regularity and continuity of court decreed support payments are as important as the overall dollar amount of those payments.

*Haycraft v. Haycraft* (1978), 176 Ind.App. 211, 375 N.E.2d 252, 255.

The rationale of the rule prohibiting prospective crediting of overpayments is totally inapplicable to an arrearage that exists at the time of the overpayment. A rule which failed to credit overpayments against an existing arrearage would create a disincentive for obligated parents to voluntarily fulfill their delinquent child support obligations. It would benefit no one to require a judicial proceeding reducing the arrearage to judgment before the obligated parent could be credited for payments against the arrearage. Furthermore, the only reasonable inference from an overpayment, standing alone and made at the time an arrearage exists, is that it is a payment on the arrearage.[2]

2. Of course other evidence may make this inference unreasonable.

3. Even had there been an arrearage, the evidence is Robert's payments were not intended as payments on arrearage but, instead, were a voluntary increase in support and, as such, a gift. As Robert explained:
   A. I was divorced from my second wife and my child support for one child was for that marriage was $125.00 a month. I had talked to Joyce and told her that I didn't feel right that I paid the second one that amount without being able to support my first two daughters better and I told her that I would increase the monthly support to $150.00 and I did that.
       *    *    *    *    *    *
   Q. You are saying this $150.00 payment, that $15.00 increase was voluntary by you to be used for current support and wasn't to make up any arrearage, is that what you are saying you voluntarily did it to help the kids?
   A. That's correct.
   Record at 80–81.

4. In fact, the uncontroverted evidence is the allotment overpayment of $115 per month

Here, there were three (3) periods when Robert made overpayments: nine (9) monthly payments of $150; six (6) monthly payments of $250; forty-two (42) monthly payments of $200; and a combined overpayment of $580 for February, March and April 1985.

The trial court did not err in not crediting Robert with the $15 overpayments from February 1975 through September 1975. At that time, he was not delinquent in his child support obligation.

The trial court's finding number 1 purports to find a delinquency in the amount of $330. However, in so doing, the trial court erred. The uncontroverted evidence is the "bad check" was written in January 1976 not January 1975. Therefore, according to the trial court's remaining findings, Robert was not delinquent in his court-ordered child support until November 1975. Consequently, there was no delinquency against which the $15 overpayments, made prior to November 1975, could be credited.[3]

However, the trial court did err, as a matter of law, when it failed to credit Robert's remaining overpayments on his pre-existing delinquent arrearage. The record is devoid of evidence to rebut the reasonableness of the inference that the remaining overpayments were payments on Robert's pre-existing arrearage.[4] Hence, the

which Joyce acknowledged receiving from February 1979 through July 1979, the allotment overpayment of $65 per month she acknowledged from January 1981 through July 1984, and the overpayment in February, March and April of 1985 which Joyce acknowledged receiving in the total amount of $580 were payments on arrearage. For example, in response to Joyce's request Robert pay the total arrearage, he told her the "best I could do was about $250.00 a month." Record at 83. Thereafter, Robert made several payments of $250 per month. At another time, Robert stated, "I told her that I would pay her $200.00 a month from then on to make up the arrearage that had occurred over the period when I was on unauthorized absence from the Navy." Record at 84. Hence, the evidence is that the purpose of the overpayments was as payments on the pre-existing arrearage. Nevertheless, this evidence is unnecessary due to the reasonable inference that any overpayment on support when there is a pre-existing delinquency is a payment on that delinquency.

trial court erred in not crediting Robert with six (6) months of overpayments at $115 per month, forty-two (42) months of overpayments at $65 per month, and overpayments in 1985 of $580, for a total credit of $4,000.

Further, the trial court erred in including within its arrearage computation the sum of $330 as reported in its finding number 1. First, to the extent the trial court found an arrearage for a month in excess of $135 the trial court erred as a matter of law because the court-ordered monthly support was $135. In fact, the evidence is the difference between the $330 and $135 was an amount Robert was reimbursing Joyce for a Christmas gift he had her purchase on his behalf. That $195, not being support, was erroneously included in the trial court's computation of a support arrearage. As previously discussed, the $330 "bad check" was written in January 1976, not January 1975. Accordingly, the trial court also erred in including the $135 in its computation of the arrearage because a $135 for the January 1976 nonpayment of support is also included in the trial court's finding number 3 calculating arrearages for that year. Thus, the trial court erred in including $330 in the arrearage calculation because $195 was not child support and $135 was otherwise included.

Therefore, we reverse the judgment of the trial court as it determined the amount of the child support arrearage and order the cause remanded with instructions to enter judgment for a delinquency in the amount of $1,085 ($5,415–$4,000–$330) as of the date of the original judgment. In all other respects, the judgment of the trial court is affirmed.

BUCHANAN and HOFFMAN, JJ., concur.