Cathy L. JENKINS,
Appellant/Petitioner

v.

Glen A. JENKINS, Appellee/Respondent

No. 27A02–9005–CV–00301.[1]

Court of Appeals of Indiana,
Fifth District.

Feb. 26, 1991.

Barry S. Herndon, Indianapolis, for appellant/petitioner.

Warren Haas, Marion, for appellee/respondent.

BARTEAU, Judge.

Subsequent to the dissolution of her marriage, Cathy Jenkins brought a contempt action against Glen Jenkins, her former husband, seeking payment of past due child support. She also petitioned the trial court to reduce to judgment a $100.00 property settlement. The court held Glen not in arrears on child support, denied the petition, and ordered Cathy to pay $150.00 to Glen's attorney. Cathy appeals. The issues presented are:

1. This case has been diverted to this office by order of the Chief Judge.

1. whether the trial court erred in holding Glen not in arrears on child support payments;
2. whether a debt in property settlement may be satisfied from a surplus in child support payments; and,
3. whether the trial court's order for payment of attorney's fees was an abuse of discretion.

We affirm in part and reverse in part.

## FACTS

Cathy filed for divorce from Glen on December 8, 1988. Their marriage produced a son, Zachary, born October 3, 1985. On Dec. 21, 1988 Cathy's counsel advised the court that the parties had agreed provisionally that Glen would pay $100.00 per week for the support of Zachary. On July 28, 1989 the parties agreed to reduce the $100.00 weekly support to $55.00. Both agreements are reflected in the record, which shows a fairly regular history of payments through the court of $100.00 weekly from December 30, 1988 until July 27, 1989, changing then to $220.00 monthly [2].

A final decree of dissolution was entered on October 24, 1989, made *nunc pro tunc* to October 19. The decree incorporated a settlement negotiated by the parties and signed by them on October 13. The settlement continued child support at $55.00 weekly, and provided that Glen would pay Cathy $100.00 as his share of a consultant's fee for evaluating Glen's pension.

On December 12, 1989, within two months of the final decree, Cathy petitioned for a contempt citation against Glen, complaining that (1) he was in arrears on child support because since July 28 he had been paying only $55.00 each week though the decrease from $100.00 did not take effect until entry of the final decree in October, (2) that on one occasion he had unilaterally extended his visitation rights, and (3) that he had failed to pay the $100.00 debt [3]. Glen responded with a motion seeking modification of the decree's visitation terms [4].

A hearing was held on March 1, 1990. Glen argued at the hearing that if the court found him ahead on his child support obligation, then his debt of $100.00 could be satisfied by subtraction from his excess support payments. The status of his support account depended on whether the reduction in weekly child support took effect at the time of the July agreement, or, at entry of the final decree in October.

Glen offered alternate computations: if the court held the reduction in weekly child support from $100.00 to $55.00 to have taken effect in July, then he had overpaid child support by $155.00; or, if the court held the reduction in effect as of October, then he was in arrears $385.00 in child support and also owed the $100.00 debt, for a total delinquency of $485.00 [5].

Cathy argued that the reduction took effect with the final decree. However, her calculations yielded a child support arrears of $495.00, plus the $100.00 debt, for a total arrears of $595.00.

---

**2.** Where child support is quantified in weekly terms but paid monthly, the multiplier should be 4.33 times the weekly amount, rather than 4.00. Otherwise, the twelve monthly payments in a year would total only forty-eight weekly payments, rather than fifty-two.

**3.** We note that although the contempt power is available to enforce a child support order, it provides no remedy against non-payment of a fixed sum of money in a property settlement. The Indiana Constitution, Article 1, § 22 prohibits imprisonment for debt. *See Chapman v. Chapman* (1987), Ind.App., 512 N.E.2d 414, 418, *trans. denied* (citing cases).

**4.** Visitation is not at issue in this appeal.

**5.** Glen supplied these alternative calculations:

"If the support changed as of 07/28/89, the respondent's support arrearage through 02/24/90 is computed as follows:

(100/week × 31 = 3,100) + (55/week × 31 = 1,705) = *$4,805*. $4,805 due—$4,960 paid = $155 excess = no arrearage. *Respondent paid in full through 03/09/90, with $45 paid toward the payment due on 03/16/90.*

If the support changed as of 10/19/90, the Respondent's support arrearage through 02/24/90 is computed as follows:

(100/week × 43 = 4,300) + (55/week × 19 = 1,045) = *$5,345*. $5,345 due − $4,960 = *$385 arrearage through 02/24/90*."

Record at 89 (emphasis in original).

No express decision was made on the $100.00 debt. It does appear the judge ruled that the reduction in child support took effect at the time of the agreement rather than at the time of the decree:

Okay, first, regards the support issue, if, both parties indicated that it was their intent that the support would be $55.00 a week when they were here for the first dissolution hearing. That's when the Respondent started paying $55.00 per week. They come in some three, four months later, file a petition, file a final petition in dissolution that says it's going to be $55.00 a week. I would assume if there were some complaint, that it would have been raised at that particular point in time. I would say that the filing of the petition and the acquiescence until the citation is filed somewhat later would indicate that the parties certainly intended that it be $55.00 a week, effective at the time of the final hearing.

Record at 231–32. The docket entry states "Court determines that Respondent is not in arrears on child support." Record at 5.

Cathy appealed that ruling. During the pendency of her appeal, she returned to court with a petition to reduce the property settlement to judgment on April 11, 1990. This petition complained that the $100.00 debt remained unpaid. Glen responded that the ruling of March 1 held him not in arrears on child support, implying that the trial judge had adopted Glen's first alternate calculation, therefore implying further that his $100.00 debt had been deemed paid from the excess in child support payments. Also, Glen requested attorney's fees.

A hearing was held on May 1, 1990. The record of that hearing pertinent to this appeal is as follows:

THE COURT: Gentlemen, I suppose if I had clarified my order back in March we wouldn't be here today. Mr. Haas, [Glen's counsel] if I follow your argument, basically what the court did March the 2nd was accepted your computations there that said he was forty-five dollars overpaid on his support.

MR. HAAS: For the payment due March 16th, Judge.

THE COURT: Alright, which I suppose, you know, I just, I determined that he was not in arrears at that time but I did not make an order on the hundred dollars. If you follow your theory actually he'd owe her fifty-five dollars would he not?

MR. HAAS: No, Your Honor. March the 2nd was the date the arrearage was found to not exist. March 16th is two payments down the road, ninety-five dollars, in other words, toward the hundred. Since you didn't address the hundred dollars we felt that you had disposed of it in that manner. Indicating, rather than saying that he's prepaid through March 16, 1990, with the exception of five dollars, that the hundred dollars was distroyed [sic], because you would have a payment on March the 9th and March the 16th. I'm sorry, the payments are fifty-five dollars a piece, so with the fifty-five for the March the 9th payment, uh, and forty-five dollars extra toward the 16th, it came out to be exactly one hundred dollars over.

THE COURT: Alright.

MR. HAAS: And that's what we thought the court had done.

THE COURT: Yeah, I follow you there. Mr. Herndon [Cathy's counsel], do you want to address that?

MR. HERNDON: **I think Mr. Haas' argument that child and property settlement cash lump sums are lumped together in an implied order, he says the court is implying by its order that that's what, uh, the court means, I think that's way off base. There's no authority and he's not given us any.**

THE COURT: **Mr. Herndon, let me ask you this though. You know he's ahead on his child support and behind on his hundred dollars. He's ahead a hundred dollars here and he's behind a hundred dollars over there, so you're even.**

MR. HERNDON: Okay, wait a minute.

THE COURT: **Now I can order him to pay you one hundred dollars and order, or your client a hundred dollars, and order your client to pay him back a hundred dollars.**

MR. HERNDON: If the court wants to rule that the child support and property settlements are equal dollars that is correct, you can do that.... So if the court wants the two together, just on how he makes his payment, right before any hearing he can fluxuate [sic] it to make it look ahead or behind, rather than actually making that cash payment.

THE COURT: Alright, but your calculation on his child support would run from March the 2nd, so, **it all eventually comes out of the same pocket.** Alright, I'm going to take it under advisement.

Record at 266–71 (emphasis added).

The trial judge denied Cathy's petition to reduce property settlement to judgment and ordered her to pay $150.00 in fees to Glen's attorney. Cathy appeals both rulings. Her appeal has been consolidated with her appeal of the March 1 ruling on child support.

## DISCUSSION

### I.

### Child Support

■ We begin our analysis with an observation that the trial court is accorded latitude in decisions regulating child support payments, and we will not disturb the court's ruling absent an abuse of discretion. *Porter v. Porter* (1988), Ind.App., 526 N.E.2d 219, *trans. denied.*

Regarding child support, the trial court's March 1 ruling states only that Glen was not in arrears on support payments. There is no statement whether his account was merely current, or paid in advance and if so, by how much. We need not don the hats of accountants, though, because Cathy has not opposed the March 1 ruling in her brief. We see waiver. Accordingly, we affirm the ruling from March 1 that Glen was not in arrears on child support. More-

over, because of Cathy's waiver of this issue, we need not express an opinion on the exact status of Glen's support account.

### II.

### Property Settlement

Before deciding whether denial of Cathy's petition to reduce the $100.00 property settlement to judgment was error, we must determine the basis of that denial. The March 1 ruling is silent as to the $100.00 debt. The docket entry for the May 1 hearing reports simply "petition denied," without further explanation.

■ Based on the record excerpted above we conclude that the petition was denied pursuant to a theory of "set-off." It appears that the trial court deemed the debt satisfied from an excess in child support payments. Although the transcript is somewhat ambiguous, our reading of it, especially the language highlighted, convinces us that the foregoing is the only reasonable explanation of the trial court's decision. Thus, the question becomes whether a debt in property settlement may be satisfied from a surplus in child support payments. We hold it may not, and that denial of the petition was error.[6]

■ Overpayment of child support is considered a voluntary contribution rather than a prepayment of future obligations, because "regularity and continuity of court decreed support payments are as important as the overall dollar amount of those payments." *Haycraft v. Haycraft* (1978), 176 Ind.App. 211, 375 N.E.2d 252, 255. For example, in *Olson v. Olson* (1983), Ind. App., 445 N.E.2d 1386, the court treated excess payment to one child by a non-custodial parent paying support to several children as a gratuity—not a prepayment to the one, and not available to satisfy an arrears to the others.[7]

---

6. Cathy's brief suggested alternative characterizations of the trial court's ruling: (1) denial was based on set-off, or (2) denial was a modification of the final decree. Cathy contends, and we agree, that denial as a modification would be error. A property agreement incorporated into a final decree of dissolution may not be mod-

ified absent fraud, a provision in the agreement for modification, or the parties' consent. Ind. Code 31–1–11.5–9, –10, –17. Here, there is no allegation of fraud, no modification clause in the agreement, and obviously no consent.

7. An exception to the rule against crediting overpayments exists if the overpayment resulted

■ Moreover, because the custodial parent acts in a fiduciary capacity when receiving child support payments, the payor cannot withhold support payments to offset a debt owed by the custodial parent to the payor. *In re Marriage of Honkomp* (1979), 178 Ind.App. 68, 381 N.E.2d 881, *reh'g denied*. Although the money is paid to the custodial parent, that person is merely a conduit—the payor's obligation is to the child, not to the custodian. *See Beeson v. Beeson* (1989), Ind.App., 538 N.E.2d 293. *But see Whitman v. Whitman* (1980), Ind. App., 405 N.E.2d 608 (payments directly to child not credited because regular payment to custodial parent facilitates duty of day-to-day care); *Bendix v. Bendix* (1990), Ind. App., 550 N.E.2d 825, *trans. denied* (payments directly to child not credited because such undermines authority of custodial parent to control expenditure of child support).

We hold that a debt in property settlement may not be satisfied from an overpayment of child support. To conclude otherwise would contravene the rule that overpaid child support is a gratuity.

■ In addition, because the role of a custodial parent receiving child support is that of trustee for the child's account, *In re Marriage of Honkomp, supra,* it follows that the custodial parent may not appropriate funds from the child's account to satisfy any other debt. *A fortiori*, the payor cannot direct a deduction from child support to pay a separate obligation. Holding child support distinct from other accounts protects the child's right to receive support. *Accord Harner v. Harner* (1982), 105 Ill. App.3d 430, 61 Ill.Dec. 312, 434 N.E.2d 465 (overpayment in child support cannot offset deficit in payment of medical expenses). Finally, to allow commingling would create a confusion of remedies because child support can be enforced through the contempt power, while property settlements cannot. *See Chapman v. Chapman, supra.*

At the May 1 hearing, Glen testified he had not paid the $100.00, stating his belief that his debt had been satisfied from his child support account. Because a debt in property settlement cannot be satisfied from a surplus in child support payments, Glen has not paid the debt, and therefore it was error to deny Cathy's petition to reduce the debt to judgment. We remand with instructions to enter judgment for Cathy on her petition.

### III.

### Attorney's Fees

■ The ruling from May 1 ordered Cathy to pay $150.00 to Glen's attorney. Awards of attorney's fees in dissolution of marriage actions are established in Ind. Code § 31-1-11.5-16. To the statutory permission to award attorney's fees, our case law has added a requirement that the trial judge "must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such other factors as bear on the reasonableness of the award." *Planert v. Planert* (1985), Ind.App., 478 N.E.2d 1251, 1254. Moreover, an award of attorney's fees cannot rest solely on a determination by the trial court that the case is unmeritorious or malicious. *P.B. v. T.D.* (1987), Ind.App., 507 N.E.2d 992, *appeal after remand* (1989), Ind.App., 544 N.E.2d 558, *rev'd on other grounds* (1990), Ind., 561 N.E.2d 749.

In any event, the trial court's decision will not be disturbed absent an abuse of discretion. *Lay v. Lay* (1987), Ind.App., 512 N.E.2d 1120. An abuse of discretion occurs when a trial court ruling is clearly against the logic and effect of the facts and circumstances in evidence, or the inferences reasonably drawn therefrom. *In re Marriage of Sharp* (1982), Ind.App., 430 N.E.2d 417.

In *Barnett v. Barnett* (1983), Ind.App., 447 N.E.2d 1172, the First District held the trial court's award of attorney's fees an abuse of discretion. The trial court in *Barnett* "conducted no evidentiary hearing and there is no indication that he considered the

---

from misrepresentation by the custodial parent, who may be ordered to make restitution. *Best v. Best* (1984), Ind.App., 470 N.E.2d 84. Also, credit may accrue where "the only reasonable inference from an overpayment, standing alone and made at the time an arrearage exists, is that it is a payment on the arrearage." *Holy v. Lanning* (1990), Ind.App., 552 N.E.2d 44, 46.

economic circumstances of the parties, or could have, under the state of the record." *Id.* at 1176.

The record before us does not reveal the basis upon which the trial court awarded attorney's fees. No evidence was taken relevant to the parties' financial positions. The trial court offered no explanation for its ruling, either at the hearing or by writing. Our examination of the entire record uncovered only that the parties were both employed when Cathy filed for divorce, earning about the same amount, and both may have been unemployed at the time the trial court ordered Cathy to pay Glen's attorney. Moreover, Glen's request for attorney's fees was silent as to his economic circumstances, contending instead that an award was appropriate because Cathy's petition was "unfounded and spurious" and constituted "further harassment and abuse."

We consider *Barnett* persuasive in the case before us, and hold that the trial court abused its discretion in ordering Cathy to pay attorney's fees. Such an award must be predicated upon evidence of the financial circumstances of the parties. The award of attorney's fees is reversed.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

BUCHANAN and SHARPNACK, JJ., concur.